[No. 12268.   Department Two.   September 25, 1915.]

F. B. PLATH, *as Administrator etc., Appellant*, v.
PAT MULLINS *et al., Respondents*.[1]

HUSBAND AND WIFE—COMMUNITY PROPERTY—PRESUMPTIONS. Where a husband acquired real property in this state during the marriage relation, it is presumed to be community property, and the burden rests upon the spouse asserting its separate character to establish the fact by clear and satisfactory evidence.

SAME—COMMUNITY PROPERTY—WIFE'S SEPARATE ESTATE—GIFTS— PRESUMPTION—EVIDENCE. Where husband and wife, from profits of business conducted in Montana, paid for real property purchased in this state in the husband's name, it could become the separate property of the wife only by reason of a gift to her of the profits of the Montana business, and tracing it to the land; which gift cannot be presumed, but must be shown by clear, convincing, strong and satisfactory evidence.

SAME—COMMUNITY PROPERTY—SEPARATE PROPERTY OF WIFE — PRESUMPTIONS. The fact that a married woman kept bank accounts in her own name does not establish their separate character, the presumption being that they were community property.

[1]Reported in 151 Pac. 811.

EVIDENCE — ADMISSIONS — DECLARATION OF DECEASED PERSONS — WEIGHT. Evidence of admissions of a deceased husband that a ranch, purchased in his name, was the separate property of the wife, is competent, but should be received with caution and subject to careful scrutiny.

HUSBAND AND WIFE — COMMUNITY PROPERTY — GIFTS—PRESUMPTIONS—RESULTING TRUST—PROOF. A contract for the purchase of land in the name of the husband, even though purchased with separate funds of the wife, raises a presumption of a gift to the husband, rather than a trust for the wife, to be overcome only by clear, cogent and convincing evidence to the contrary.

APPEAL—REVIEW—COMPLAINT—OBJECTIONS—WAIVER. Upon objection first made on appeal that a complaint was insufficient in failing to show decedent's insolvency, a complaint stating that the estate had no other property to pay claims of creditors, will be held to state a cause of action.

EVIDENCE—ADMISSIONS BY AGENTS. Where a party expressly refers an inquiry to her attorney for answer, his admission against her interest is admissible, since he was made an accredited agent for that purpose.

STATUTES—FOREIGN LAWS—PRESUMPTIONS. The laws of another state, not pleaded or proven, are presumed to be the same as our own.

EXECUTORS AND ADMINISTRATORS—CLAIMS—PRESENTATION — BAR— EVIDENCE. Failure to present claims against an estate in Montana within the statutory period, which is one year after the first publication of notice, cannot be asserted as a bar, in the absence of proof of the giving of notice to creditors.

Appeal from a judgment of the superior court for Yakima county, Preble, J., entered July 1, 1913, upon findings in favor of the defendants, in an action by an administrator to subject an equitable interest in real property to the claims of creditors, tried to the court. Reversed.

*Wende & Taylor* and *E. B. Velikanje*, for appellant.

*H. J. Snively*, for respondents.

MAIN, J.—This action was brought by the plaintiff, as administrator *de bonis non* of the estate of A. W. Burnett, deceased. The purpose of the action was to have the equitable interest in certain real estate situated in Yakima county,

Washington, subjected to the claims of creditors of the estate. The principal defense was that the interest in the land sought to be reached for the benefit of creditors was the separate property of Mrs. Burnett, wife of the deceased. The cause was tried to the court without a jury. The trial judge was of the opinion that the evidence established the fact that the interest in the property was the separate property of Mrs. Burnett, and entered judgment accordingly. From this judgment, the plaintiff appeals.

The facts are as follows: Some time during the year 1891, A. W. Burnett and Josie Burnett were united in marriage, which relation continued until the death of A. W. Burnett, which occurred on June 4, 1910. At the time of the marriage, and for some years subsequent thereto, Mr. Burnett was engaged in the butcher business at Anaconda, Montana. Some time during the year 1897, the butcher business was discontinued. Thereafter, and in February, 1898, Mr. Burnett went to Alaska, where he remained for a period of approximately eighteen months. During the time Mr. Burnett was in Alaska, Mrs. Burnett conducted a restaurant at Anaconda. The restaurant business was disposed of some time during the year 1903, the business having been operated for a period of five years. The profits from this business amounted to $4,400.

In January, 1904, the Clarence Hotel at Butte, Montana, was acquired by Mr. Burnett, and was conducted thereafter for a period of approximately three years, when the hotel was disposed of. During the month of December, 1907, Mr. and Mrs. Burnett came to North Yakima and vicinity, and remained about two weeks. During this time they visited with Mr. Burnett's sister and her husband, a Mr. and Mrs. Nesley. After remaining at North Yakima for the time mentioned, the Burnetts returned to Butte, where the Braund Hotel was purchased, and was thereafter conducted until Mr. Burnett's death.

Some time during the month of February, 1908, Mr. Burnett returned to North Yakima, where he contracted to purchase from one William L. Lemon and wife 20 acres of land. The contract with Lemon was made with Mr. Burnett only; Mrs. Burnett's name does not appear in it. The contract for this land was executed on the 13th day of that month. The purchase price was $10,000, $3,000 of which was paid at the time the contract was executed and delivered. The balance, as provided in the contract, was to be paid $1,000 August 15, 1908; $2,000 February 15, 1909; $2,000 February 15, 1910; and $2,000 February 15, 1911.

While running the restaurant in Anaconda, Mrs. Burnett had money on deposit in her own name in the Hogue-Daley Bank of that city. This money was derived from the proceeds of the restaurant business. After moving from Anaconda to Butte, and on November 18, 1904, Mrs. Burnett opened an account in the State Savings Bank of that city. This account continued until March 19, 1910, when it was closed. From November 23, 1904, until August 10, 1910, Mrs. Burnett had money on deposit in her own name with Yegen Brothers' Bank in Butte. On or about February 10, 1908, a check for $3,500, drawn by Mrs. Burnett on her account in the State Savings Bank, was received by the Silver Bow National Bank of Butte in exchange for a draft issued by that bank to A. W. Burnett. On February 13, 1908, A. W. Burnett indorsed to the Yakima Valley Bank of North Yakima, Washington, a draft for $3,500, issued by the Silver Bow National Bank to him. At the same time, Mr. Burnett opened an account with this bank and received credit for the amount of the draft. On February 14, 1908, the Yakima Valley Bank paid to A. W. Burnett, or to his order, $2,750. This $2,750 apparently went to Lemon, and was applied upon the first payment made upon the contract. Where the other $250 necessary to make up the $3,000 to meet this payment came from does not appear. During the month of March, 1910, the Yakima Valley Bank loaned to

A. W. Burnett and his wife $2,000, to secure which a note was given, and the contract with Lemon was assigned to the bank. On May 3, 1910, the $2,000 thus borrowed was paid by the bank directly to Lemon, and was applied upon the purchase price of the land. In addition to the $3,000 paid when the contract was executed, and the $2,000 borrowed from the bank and paid to Lemon, Mr. Burnett paid upon the contract the $1,000 due August 15, 1908, and the $2,000 due February 15, 1909. From what source the money which met these two payments last mentioned was derived does not appear. The only evidence upon the question is the testimony of Lemon that the payments were made by Mr. Burnett.

If the property purchased from Lemon became the separate property of Mrs. Burnett, it is by reason of the facts already stated and declarations made by Mr. Burnett during his lifetime. The evidence touching the declarations relied upon may be briefly summarized as follows: A. G. Burnett, a brother of A. W. Burnett, deceased, testified that, .about ten days prior to the death of his brother, he had a conversation with A. W. Burnett, in which the latter said, that his affairs were in bad shape, but his wife had money of her own; that she had always taken her part out of the business; that the understanding between them was that Mrs. Burnett always took her part· of the money or profit from the business, and it was her own personal property; that if anything happened to him, his wife would have her ranch in Yakima; that the property in Yakima was his wife's, and bought with her money. This conversation, it should be noted, occurred approximately two months after A. W. Burnett had borrowed the $2,000 to make the payment upon the ranch due February 15, 1910.

J. W. Nesley, a brother-in-law of A. W. Burnett, deceased, testified that, while Mr. and Mrs. Burnett were in North Yakima for about two weeks in December, 1907, he heard Mrs. Burnett say to her husband: "You know Alex that this is my money that is buying the ranch." The witness

did not remember Mr. Burnett's answer, but testified that the statment was not denied.

One C. P. Flannagan testified that he had a conversation with Mr. Burnett in the bar room of the Yakima hotel upon one occasion when the latter was showing him some orchard views; and Mr. Burnett said that he wished the orchard were his, but that it was not, that it belonged to his wife; that she was using her money in the Yakima property, and he was putting his into mining.

A Mrs. Delia O'Neil, the wife of a brother of Mrs. Burnett, testified that she had frequently heard talks between the Burnetts touching business affairs, and that in these talks she heard Mr. Burnett say, after he returned from Alaska, that the profits of the restaurant business were his wife's; that before they moved to Butte she heard him say that his wife was loaning him $4,400, which he was going to pay back out of the profits of the Clarence Hotel business; that his wife was to have one-half of the profits out of this business; that she heard Mr. Burnett speak of the Yakima ranch property as his wife's.

From a reading of this witness' testimony as it appears in the statement of facts, it is very apparent that she was an ardent partisan of her sister-in-law. Referring to her testimony, the trial judge in his opinion said: "I believe that she was not wilfully falsifying, but painting the truth in glowing colors."

The first question to be considered is whether, under the facts stated and the testimony bearing upon the declarations made by A. W. Burnett during his lifetime, the Yakima property became the separate property of Mrs. Burnett. The property was acquired during the marriage relation. It is a well known rule that property acquired by purchase during the marriage is presumed to be community property, and that the burden rests upon the spouse asserting its separate character to establish his or her claim by clear and satisfactory evidence. *Ballard v. Slyfield*, 47 Wash. 174, 91 Pac.

642; *Denny v. Schwabacher*, 54 Wash. 689, 104 Pac. 137, 132 Am. St. 1140. In the *Denny* case it was said:

"Property acquired by purchase during marriage is presumed to be community property, and the burden rests upon the spouse asserting its separate character to establish his or her claim by clear and satisfactory evidence. *Ballard v. Slyfield*, 47 Wash. 174, 91 Pac. 642."

If the property became the separate property of Mrs. Burnett, it was by reason of a gift to her of the profits of the restaurant business conducted in Anaconda, and a part of the profits derived from the conduct of the Clarence Hotel and the Braund Hotel in Butte; and by reason of the further fact that this money, if it became her separate property, can be traced to the land in question. *Yake v. Pugh*, 13 Wash. 78, 42 Pac. 528, 52 Am. St. 17. The law does not presume a gift. The person who asserts title by gift must prove it by evidence that is clear and convincing, strong and satisfactory. *Jackson v. Lamar*, 67 Wash. 385, 121 Pac. 857; *Knowles v. Slocum*, 83 Wash. 158, 145 Pac. 204. In the case last cited it was said:

"A gift will not be presumed, but he who asserts title by this means must prove it by evidence which is clear, convincing, strong, and satisfactory."

The fact that Mrs. Burnett had kept bank accounts in her own name would not establish the separate character of the funds. Moneys deposited in this way by a married woman are presumed not to be her separate property. McKay, Community Property, § 322. If the separate character of the funds has been established, it must be by virtue of the evidence relative to the declarations of Mr. Burnett during his lifetime. While testimony as to such declarations is competent evidence, it should be received with caution and subjected to careful scrutiny. No class of evidence is more subject to error or abuse. 2 Jones, Commentaries on Evidence, § 295; 14 Ency. Evidence, p. 147; *Lea v. Polk County Copper Co.*, 21 How. (U. S.) 493; *Curtice v. Crawford County Bank*, 110

Fed. 830; *Johnson v. Quarles*, 46 Mo. 423; *In re Dundas'*
*Estate*, 213 Pa. 628, 63 Atl. 45; *Clark v. Turner*, 50 Neb.
290, 69 N. W. 843, 38 L. R. A. 433.

In the text of Jones, above cited, after stating the general
rule, it is said:

"*A fortiori*, where the admission is that of one deceased,
the caution should deepen into suspicion, for reasons that are
obvious and without corroboration is of little value."

In the *Lea* case, *supra*, it is said:

"Courts of justice lend a very unwilling ear to statements
of what dead men had said."

In support of the claim that the property is the separate
property of the wife, there are the declarations of the various
witnesses as to the declarations of Mr. Burnett that the
proceeds of the restaurant business at Anaconda were Mrs.
Burnett's; that there was an understanding between the
spouses that Mrs. Burnett was to have her share of the pro-
fits of the hotel business at Butte; that Mrs. Burnett's money
was buying the land, and that the land was hers. Against
this evidence is the fact that the contract for the purchase
was taken in the name of Mr. Burnett; and the fact that Mr.
Burnett borrowed $2,000 to make the payment due February
15, 1910, when at this time and for some months prior there-
to, as well as some time thereafter, his wife had on deposit
in the Yegen Brothers Bank approximately $2,500 in money,
and in the State Savings Bank approximately $400. The
contract being in the name of the husband, even though the
land were purchased with the separate funds of the wife,
would raise a presumption of a gift rather than a trust; and
this presumption can be overturned and the trust relation es-
tablished only by evidence that is clear, cogent, and convinc-
ing.

In *Denny v. Schwabacher*, *supra*, it was said:

"Where the consideration for a conveyance of property is
paid from the separate funds of one spouse and the property

is conveyed to the other, a presumption of a gift rather than a trust arises, and this presumption can only be overthrown and the trust relation established by evidence that is clear, cogent, and convincing.    Pomeroy, Equity Jurisprudence, § 1041."

Under the rules of law above stated, we think the evidence was not of that clear and convincing character necessary to establish title to the real estate in question by gift of the moneys mentioned.    In addition to this, as already stated, the evidence fails, with the exception of $2,750 mentioned, to trace the money which it was claimed belonged to Mrs. Burnett into the property.    As sustaining the respondent's contention that the evidence shows a gift, *Yake v. Pugh*, 13 Wash. 78, 42 Pac. 528, 52 Am. St. 17, is cited.    That case was tried to a jury.    A verdict was returned finding that the property in question had become the separate property of the wife by gift.    Upon appeal it was held that it was not error for the trial court to refuse to give a peremptory instruction directing that the jury find that there was no gift.    It was also there said: "The proofs were sufficient to support the verdict of the jury to the effect that the goods were the separate property of the wife."    The distinction between that case and this is, that there the question was tried to the jury; and this court does not disturb the finding of a jury upon a question of fact when there is substantial evidence to sustain it.    In the present case the cause was tried to the court without a jury, and is here tried *de novo*.    It might also be mentioned that the facts in that case are somewhat stronger in sustaining a gift than are those in the present case.

The respondent contends that the complaint does not state a cause of action.    The basis of this contention is the claim that the complaint does not allege that A. W. Burnett did not have property sufficient to pay all his debts.    No demurrer was interposed to the complaint in the superior court, and the question is presented here for the first time.    Under the liberal rule applied to pleadings in such cases (*Lipscomb v.*

*Exchange Nat. Bank of Spokane,* 80 Wash. 296, 141 Pac. 686, and *Richardson v. Brotherhood etc.,* 70 Wash. 76, 126 Pac. 82, 41 L. R. A. [N. S.] 320), we think the objection to the complaint is not well founded. Especially is this true in view of the fact that the complaint alleges:

"That said estate of A. W. Burnett, deceased, has no other property or means wherewith to pay the claims of said creditors, save and except the interest and equity in the said lands and premises under said contract."

It is also contended by the respondent that the evidence does not establish that there was not sufficient property left by the deceased in Montana to pay his debts. Upon this question, one M. C. Smetters testified that he had a conversation with Mrs. Burnett probably a month after her husband's death, and that Mrs. Burnett stated to him that she did not know of any property in Silver Bow county, Montana, and referred him to her attorney, one Frank C. Walker, of Butte; that in conversation with Mr. Walker, the latter said that there was no property left there that claims could be filed against. Mrs. Burnett having referred the witness to the attorney, what the latter said was competent evidence against her. In 2 Jones, Commentaries on Evidence, § 263, it is said:

"When a party to any proceeding expressly refers to any other person for an answer on a particular subject in dispute, such answer is in general evidence against him, for the reason that he makes such third person his accredited *agent* for the purpose of giving such answer."

The respondent also claims that the appellants cannot prevail because they did not present their claims to the administrator or administratrix of the estate in Montana within the statutory period of one year. The laws of the state of Montana were neither pleaded nor proven, and are therefore presumed to be the same as the laws of this state. *Mantle v. Dabney,* 44 Wash. 193, 87 Pac. 122; *Ongaro v. Twohy,* 49 Wash. 93, 94 Pac. 916. The statute of this state, Rem. &

Bal. Code, § 1472 (P. C. 409 § 339), provides, that if a claim be not presented to an executor or administrator "within one year after the first publication of the notice, it shall be barred." The record in this case fails to show when, if at all, in the administration proceedings in Montana, the first publication of notice to creditors to present their claims occurred. It follows, therefore, that the bar of the statute cannot be invoked against the claimants.

The judgment will be reversed, and the cause remanded with direction to the superior court to enter a judgment in favor of the appellant.

MORRIS, C. J., FULLERTON, and ELLIS, JJ., concur.