[No. 9255-3-I. Division One. June 1, 1982.]

*In the Matter of the Marriage of* G. L. MARTIN, *Appellant, and* P. L. MARTIN, *Respondent.*

*William H. Simmons,* for appellant.

*Ralph A. Alfieri,* for respondent.

CALLOW, J.—Gloria Martin appeals from a decree of dis-

solution entered August 6, 1980, terminating her 15–year marriage to Paul L. Martin. She assigns error to several findings of fact which affected the property distribution. With the exception of the real property, the court divided the assets equally between the parties.

Paul and Gloria married in April 1965 and separated in October 1978. Their two daughters were born in 1965 and 1970. In December 1973, Paul's mother and stepfather conveyed real property in Redmond to the couple by quitclaim deed. Paul's maternal grandfather apparently had purchased the land in the early 1900's. The deed recited that the land was conveyed "in consideration of love and affection" to "Paul Logan Martin and Gloria Martin, his wife." The trial court found that the land "is and has been the separate property of the husband since the date of acquisition." Finding of fact 10. Gloria, accordingly, was given no interest in the land. The home the couple built on the property was characterized as a community asset and awarded to Paul. In determining the net value of the home, the court deducted the estimated cost of sale, $8,100, or 10 percent of the gross value.

On appeal, Gloria challenges the finding that the real property has been Paul's separate property since it was acquired in 1973. She also contests the deduction of $8,100 from the gross value of the home.

## I
### REAL PROPERTY

The classification of property as separate or community presents a mixed question of law and fact. The time of acquisition, the method of acquisition, and the intent of the donor, for example, are questions for the trier of fact. Whether the facts, as found, support the classification of property as separate or community is for the court to determine as a matter of law. Cf. *Peeples v. Port of Bellingham,* 93 Wn.2d 766, 771, 613 P.2d 1128 (1980) (adverse possession). Thus, the finding that the Martins' real property "is and has been the separate property of the hus-

band" is actually a conclusion of law.

The findings of fact pertinent to the classification of the land are the date of the marriage and the date the deed was recorded. In addition, the deed shows that the property was conveyed as a gift, naming *both* husband and wife while the parties were married. Therefore, we must remand to the trial court for the entry of additional findings. The deed and the facts that were found do not lead to the conclusion that the land is separate property.

Property acquired by gift during marriage is the separate property of the spouse receiving the gift, RCW 26.16.010, .020, unless the gift is designated as being made to both husband and wife, *In re Estate of Salvini*, 65 Wn.2d 442, 397 P.2d 811 (1964). *Salvini* held that "[a] gift to a husband and wife is a gift to the community under our statutes"; one–half of the gift is *not* the separate property of each spouse. *Salvini,* at 448.

Professor Cross argues that *In re Estate of Salvini* should be read as creating only a presumption of community property.

> [T]he sweep of the concluding statement in *Salvini's Estate* . . . needs clarification. This statement may announce a flat rule that when the donees are husband and wife the asset acquired is necessarily community property; but *preferably the statement should be considered as the expression of a presumption which will control in the absence of proof of a different intention in the donor.* The donor, if he so intends, should be permitted to create in his donees some recognized form of common law (separate property) co–ownership. . . . [T]he presumption of a gift to the community should arise even though the transfer instrument does not indicate the marital relationship of the donees. Avoiding a flat rule and permitting a presumption of community property character to arise would recognize "the policy of the law . . . in favor of community property," but still permit the intention of the parties to control.

(Footnotes omitted. Italics ours.) H. Cross, *The Community Property Law in Washington,* 49 Wash. L. Rev. 729, 750 (1974) (quoting *Salvini,* at 448).

We agree that a gift to a married couple should only be *presumed* to be community property. The presumption is a rebuttable one. *Abel v. Abel,* 47 Wn.2d 816, 822, 289 P.2d 724 (1955). We hold that clear and convincing evidence that the property is separate is required to overcome the presumption that it is community in character. *See Beam v. Beam,* 18 Wn. App. 444, 452, 569 P.2d 719 (1977). On remand for the entry of findings, the trial court should be careful to distinguish whether Mr. Martin's mother and stepfather intended at the time the gift was given by transfer of the deed (1) to convey the land to him *as his separate property* or (2) to convey the land to *both spouses,* but on the unstated condition, expectation, or desire that the parties would remain married or (3) to convey the land to *both* as community property outright. Further, on remand for the entry of additional and consistent findings, the trial court should consider that in order for a gift to be found, there must exist (1) an intention on the part of the donor presently to give, (2) a subject matter capable of passing by delivery, and (3) an actual delivery. *Oman v. Yates,* 70 Wn.2d 181, 422 P.2d 489 (1967); *Henderson v. Tagg,* 68 Wn.2d 188, 412 P.2d 112 (1966); *Buckerfield's Ltd. v. B.C. Goose & Duck Farm Ltd.,* 9 Wn. App. 220, 511 P.2d 1360 (1973). An executed gift becomes effective and irrevocable upon delivery and divests the donor of all present control. *Basket v. Hassell,* 107 U.S. 602, 27 L. Ed. 500, 2 S. Ct. 415 (1883). If the court finds that the parents intended to convey the land to both spouses, the land must be characterized as a community asset. Including both Paul and Gloria on the deed and the stepfather's testimony[1] lend support to the second or the third proposition.

---

[1] The stepfather testified in part:

Q Okay. And you then determined that you would give Gloria and Paul one piece of it?

A I gave Paul one piece of it.

Q Why is Gloria's name on this deed?

A I don't want to shake an apple cart.

Q I see. You thought this was an apple cart?

## II
## SALE COSTS

■ Gloria argues that $8,100 in estimated sale costs should not have been deducted from the gross value of the home in determining its net value. She requests that the lien awarded her by the trial court be increased by $4,050, or one–half of $8,100. The allowance for sale costs was improper in this instance. There was no evidence that the property was going to be sold; indeed, the evidence suggested a strong desire to keep the land in the family. The trial court explained its reasoning:

> As a matter of fact, even though neither party argued it, I think what you have got to get is that net value, and

A  And if I put Paul's name on there alone, I didn't think that his wife would like it very much.

Q  Why?

A  Nor do I think he could have gotten the loan with it just his name on the deed.

. . .

Q  Did you place any restrictions on this deed when it was given to them as a Christmas present?

A  I didn't give it to them really. I gave it to Paul, but I included her name on it—

Q  I see.

A  —to have a peaceful family.

. . .

Q  Now, in regard to an inheritance after the deed was given, what conversations did you have about an inheritance?

A  What a damned mistake I made by putting her name on the deed.

. . .

Q  All right. Except for the divorce and the situation we're in, it was your intent to give this to both parties, was it not?

A  It was my intent to give it to Paul.

Q  Why did you have her name on it when you signed it?

A  As I said before, because I didn't want to create any ill–feelings in the family.

. . .

Q  Okay. Did you pay any Federal or State gift tax on this gift?

A  Yes, I did.

Q  You filed a gift tax return?

A  Yes, I did. It's recorded.

Q  And that also included in those returns, did it, that the property was given to Gloria?

A  Yes.

*even though I realize the house isn't going to be sold,* I think it's proper in making this distribution to take the cost of sale, which I think is usually ten percent of the value of the house less the debts that he will assume, and you get to a net value, and then you balance the two columns.

(Italics ours.) In denying Mrs. Martin's motion for reconsideration, the court stated:

As to allowance of cost of sale, I have always done it. As I said before, I may be wrong, but, by George, I will be consistent, and so the motion for reconsideration as to any of those items are denied.

The decision to allow a deduction for the cost of sale is reversed and Mrs. Martin's lien increased by $4,050. The cause is remanded for further proceedings consistent herewith on the question of whether the real property is Mr. Martin's separate property and for the entry of findings of fact.

DURHAM, A.C.J., and RINGOLD, J., concur.