[No. 28758-3-I.   Division One.   April 12, 1993.]

*In the Matter of the Marriage of* STEPHEN R. OLIVARES, *Appellant, and* THERESA R. OLIVARES, *Respondent.*

*Philip A. Talmadge, Celeste A. McDonell,* and *Talmadge & Cutler, P.S.; Thomas D. Bigsby* and *Bigsby & Willson,* for appellant.

*Jerome L. Jager* and *Donna McNamara,* for respondent.

KENNEDY, J. — This appeal arises out of the dissolution of the marriage of appellant Stephen R. Olivares and respon-

dent Theresa R. Olivares. Stephen appeals the trial court's characterization and distribution of a classic white Ford Mustang automobile and a promissory note/deed of trust. We affirm.

## FACTS

Stephen and Theresa Olivares met when Theresa responded to a newspaper ad placed by Stephen in the Little Nickel Want Ads. Theresa was in her late forties and Stephen was in his early fifties. When the parties met, Theresa's second divorce was not yet final. The couple dated for about 6 months and married on December 22, 1988, in the state of Arizona. This was the third marriage for each party and both parties have adult children from prior marriages.

At the time of the marriage, Stephen, who is a carpenter by trade, had substantial property. His assets included a rental house in Arlington, Washington, a house under construction in Arlington and a car collection. Theresa's assets at the time of marriage were limited to an old car, a $1,000 certificate of deposit, and $3,000 in cash.

From the time of their marriage in December 1988, until their separation on August 1, 1990, neither party was employed. The majority of the marriage was spent traveling outside of the United States on an extended honeymoon and on vacations to the southwestern United States, Hawaii and Mexico, paid for by Stephen's parents. When the couple was not traveling they worked together on the Arlington house, which was substantially completed during the marriage.

During their marriage, the Olivares lived off the proceeds of the sale of Stephen's rental house and on gifts and loans from his parents. The couple also borrowed money from Theresa's children.

In early 1989, in an attempt to simplify their affairs, Stephen's elderly parents transferred three trust deeds, one to each of their sons and their sons' wives. Stephen and Theresa were assigned the proceeds of a promissory note/deed of trust worth about $235,000. The note at issue here pays $2,000 per month for 27 years.

The assignment was accomplished through an escrow company in California, without the assistance of an attorney. Initially, the parents were making the assignment to Stephen. However, the escrow agent added Theresa's name to the transfer documents, explaining to Stephen and his parents that it was "required by law" to include both the husband and wife as joint tenants.[1]

Mildred Olivares, Stephen's mother, testified that the purpose of the gifts was to give her three sons and their children part of their inheritance. She also stated, however, that she knew that Theresa's name was included on the assignment and that Theresa would benefit from the gift, as it was expected that Theresa and Stephen would live on the proceeds. Mildred also indicated that she had not considered that her son and Theresa might not stay married and that she had never told Theresa that the gift to her was conditioned upon her and Stephen remaining married.

The payments were set up to go into an escrow account, with both Stephen's and Theresa's Social Security numbers on the account. Prior to the couple's marital difficulties, no one ever indicated to Theresa that the assignment of the contract was not for her benefit. Theresa testified that Stephen's parents were happy with her and happy that Stephen was finally breaking out of his depression. She testified that she was told she was to be included in the gift and that she told Stephen's parents she was very appreciative and that it was a wonderful present.

During the marriage the Olivares sold Theresa's old car, a 1983 Dodge. Stephen purchased a classic white 1968 Ford Mustang with a loan based on his separate credit and placed the title in Theresa's name. Stephen contends that he placed the car's title in his wife's name so that he could sell it later that year. He testified that he had already sold as many vehicles that year as he was allowed by law without obtaining a dealer's license. Theresa asserted that the car's title was in her name because it was a gift to her.

---

[1] The parties have not briefed California law on this matter. Certainly the proposition sounds foreign to Washington lawyers and judges.

The trial court found the marriage to be irretrievably broken and granted dissolution of the marriage. The trial court found the 1968 classic white Ford Mustang to be a gift from Stephen to his wife, characterized it as community property and awarded it to Theresa.[2] The court found that the note/deed of trust was a gift to both Stephen and Theresa, characterized this gift as community property, and awarded each spouse a one-half interest therein. The distribution of the remaining property is not in dispute.

## DISCUSSION

Stephen contends that the trial court erred in holding that (1) the promissory note/deed of trust was a gift to both Stephen and Theresa and (2) the white 1968 Ford Mustang was community property. In addition, he contends that the trial court abused its discretion under RCW 26.09.080 in allocating the property because the marriage was of very short duration and the property allocated was properly characterized as his separate property.

A. Applicable Legal Standards.

The trial court has broad discretion with respect to property division in a dissolution action and will be reversed only upon a showing of a manifest abuse of discretion. *In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985); *In re Marriage of Kraft*, 61 Wn. App. 45, 50, 808 P.2d 1176 (1991), *aff'd*, 119 Wn.2d 438, 832 P.2d 871 (1992); *In re Marriage of Tower*, 55 Wn. App. 697, 700, 780 P.2d 863 (1989), *review denied*, 114 Wn.2d 1002 (1990). A manifest abuse of discretion is present if the court's discretion is exercised on untenable grounds, *Tower*, at 700; *Kraft*, at 50.

In a dissolution action, all property, both community and separate, is before the trial court for distribution, *Friedlander v. Friedlander*, 80 Wn.2d 293, 305, 494 P.2d 208

---

[2]Since the trial court found the car to be a gift to Theresa, the court should have characterized the car as her separate property. *See Scott v. Currie*, 7 Wn.2d 301, 307-08, 109 P.2d 526 (1941); *Plath v. Mullins*, 87 Wash. 403, 409, 151 P. 811 (1915); *Denny v. Schwabacher*, 54 Wash. 689, 692, 104 P. 137 (1909). The error is harmless, however. *See In re Marriage of Shannon*, 55 Wn. App. 137, 142, 777 P.2d 8 (1989) and discussion *infra*.

(1972), and the court must dispose of all of the parties' property which is brought before it. *In re Marriage of Soriano*, 31 Wn. App. 432, 437, 643 P.2d 450 (1982).

■ RCW 26.09.080 sets forth relevant factors to be considered by the court, including but not limited to:

> (1) The nature and extent of the community property;
> (2) The nature and extent of the separate property;
> (3) The duration of the marriage; and
> (4) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse with whom the children reside the majority of the time.

In considering the factors set forth in RCW 26.09.080 the courts have established a series of principles. To begin, the trial court has the duty to characterize the property as either community or separate. *Blood v. Blood*, 69 Wn.2d 680, 682, 419 P.2d 1006 (1966); *Baker v. Baker*, 80 Wn.2d 736, 745, 498 P.2d 315 (1972); *In re Marriage of Hadley*, 88 Wn.2d 649, 656, 565 P.2d 790 (1977); *In re Marriage of DeHollander*, 53 Wn. App. 695, 700, 770 P.2d 638 (1989). To accomplish this the court may consider the source of the property and the date it was acquired. *DeRuwe v. DeRuwe*, 72 Wn.2d 404, 408, 433 P.2d 209 (1967); *In re Marriage of Glorfield*, 27 Wn. App. 358, 361, 617 P.2d 1051, *review denied*, 94 Wn.2d 1025 (1980).

However, the status of the property as community or separate is not controlling. *Worthington v. Worthington*, 73 Wn.2d 759, 768, 440 P.2d 478 (1968). Rather, the trial court must ensure that the final division of the property is "fair, just and equitable under all the circumstances." *In re Marriage of Hadley*, 88 Wn.2d at 656 (quoting *Baker*, 80 Wn.2d at 745-46). *See also Worthington*, 73 Wn.2d at 768. The court may consider the health and ages of the parties, their prospects for future earnings, their education and employment histories, their necessities and financial abilities, their foreseeable future acquisitions and obligations, and whether the property to be divided should be attributed to the inheritance or efforts of one or both of the spouses. *Friedlander*, 80

Wn.2d at 305. *See also In re Marriage of Kittleson*, 21 Wn. App. 344, 352, 585 P.2d 167 (1978), *review denied*, 92 Wn.2d 1009 (1979); *Glorfield*, 27 Wn. App. at 361. Only in unusual circumstances would the trial court award the separate property of one spouse to the other. *Merkel v. Merkel*, 39 Wn.2d 102, 115, 234 P.2d 857 (1951).

■ Failure to properly characterize the property may be reversible error. *Blood*, at 682. However, mischaracterization of property is not grounds for setting aside a trial court's allocation of liabilities and assets, so long as the distribution is fair and equitable. *In re Marriage of Brady*, 50 Wn. App. 728, 731, 750 P.2d 654 (1988); *Worthington*, 73 Wn.2d at 768-69; *Brossman v. Brossman*, 32 Wn. App. 851, 854, 650 P.2d 246 (1982), *review denied*, 98 Wn.2d 1017 (1983). Where there is mischaracterization, the trial court will be affirmed unless the reasoning of the court indicates (1) that the property division was significantly influenced by characterization and (2) that it is not clear that the court would have divided the property in the same way in the absence of the mischaracterization. *In re Marriage of Shannon*, 55 Wn. App. 137, 142, 777 P.2d 8 (1989).

■ Finally, although no single factor must be given greater weight than any other factor as a matter of law, *In re Marriage of Konzen*, 103 Wn.2d 470, 478, 693 P.2d 97, *cert. denied*, 473 U.S. 906, 87 L. Ed. 2d 654, 105 S. Ct. 3530 (1985), the economic circumstances of each spouse upon dissolution is of "paramount concern". *DeRuwe v. DeRuwe*, 72 Wn.2d at 408.

B. Gift by Stephen's Parents of Promissory Note/Deed of Trust.

Stephen asserts that the trial court abused its discretion in awarding a one-half interest in the assignment of the promissory note/deed of trust to Theresa. Stephen claims that this asset is his separate property. Specifically, he contends that his parents intended to transfer part of his inheritance to him. He points to Mildred Olivares' testimony that she and her husband barely knew Theresa, as she had only been married to Stephen for 2 months at the time that the

gift was made, and they never intended to support Theresa for life through their assignment. Stephen points out that, if the property had been transferred by a will, the property would have been his separate property. RCW 26.16.010.

In response, Theresa argues that the court properly found the promissory note/deed of trust to be community property, based on the clear language of the assignment and the testimony of Mildred Olivares. Theresa points to Mildred Olivares' testimony at trial that, although she and her husband added Theresa's name to the document because the escrow agent told them that it was required by law to name their son and his wife as joint tenants, she expected Theresa to share in the benefit as long as she was married to Stephen. Theresa also points to Mildred Olivares' testimony that she never told Theresa that her portion of the gift was conditioned upon her remaining married to Stephen.

■ While property acquired during marriage is usually presumed to be community property, this presumption may be rebutted by clear and convincing evidence. *In re Estate of Smith*, 73 Wn.2d 629, 631, 440 P.2d 179 (1968); *In re Estate of Stockman*, 59 Wn. App. 711, 714, 800 P.2d 1141 (1990); *In re Marriage of Martin*, 32 Wn. App. 92, 96, 645 P.2d 1148 (1982). Generally, a gift of real property to a husband and wife under Washington law is a gift to the community and not to the spouses as tenants in common. *In re Estate of Salvini*, 65 Wn.2d 442, 448, 397 P.2d 811 (1964); *Martin*, 32 Wn. App. at 95. However, a gift of property to a person, *with a clear intent by the donor* to make a gift to that person specifically, and not to his or her spouse, is held to be that donee spouse's separate property. *Martin*, 32 Wn. App. at 95; *Enrich v. Barton*, 2 Wn. App. 954, 959-60, 471 P.2d 700 (1970). *See also* Cross, *The Community Property Law in Washington (Revised 1985)*, 61 Wash. L. Rev. 13, 31-32 (1986).

RCW 26.16.010 provides:

> Property and pecuniary rights owned by the husband before marriage and that acquired by him afterwards by gift, bequest, devise or descent, with the rents, issues and profits thereof,

shall not be subject to the debts or contracts of his wife, and he may manage, lease, sell, convey, encumber or devise by will such property without the wife joining in such management, alienation or encumbrance, as fully and to the same effect as though he were unmarried.[3]

The next inquiry here is whether the donors, Mildred Olivares and her husband, clearly stated an intent to give the promissory note/deed of trust to Stephen alone. *In re Marriage of Martin, supra,* is similar to the present case and helpful in analyzing this issue. In *Martin,* after the couple had been married 8 years, the husband's parents conveyed land by quitclaim deed, "in consideration of love and affection", to "Paul Logan Martin and Gloria Martin, his wife." Paul and Gloria later built a home on the property. *Martin,* 32 Wn. App. at 94. Upon their divorce in 1980, the trial court found that the land was the separate property of the husband, and gave the wife no interest in the land, although the court characterized the home as community property. *Martin.*

The appellate court remanded the case to the trial court for further findings, remarking that the trial court's conclusion that the land was the husband's separate property was not supported by the facts, given that (1) the asset was acquired during the marriage, (2) the property was conveyed as a gift, and (3) the deed named both husband and wife as donees. *Martin,* at 95.

According to the *Martin* court, on remand the trial court's task was to determine whether the intention of the grantors was:

> (1) to convey the land to [the husband] *as his separate property* or (2) to convey the land to *both spouses,* but on the unstated condition, expectation, or desire that the parties would remain married or (3) to convey the land to *both* as community property outright.

*Martin,* at 96. The appellate court went on to state that:

> If the [trial] court finds that the parents intended to convey the land to both spouses, the land must be characterized as a community asset. Including both Paul and Gloria on the deed

---

[3]There is an identical statute applying to wives, RCW 26.16.020.

and the stepfather's testimony lend support to the second or the third proposition.

(Footnote omitted.) *Martin*, at 96. In *Martin*, the stepfather's testimony indicated that he intended to give the land to the husband, but he put the wife's name on the deed to avoid negative feelings within the family. The stepfather further indicated that he filed a gift tax return, which showed that the property was given to both spouses. *Martin*, at 96 n.1.

In the present case, as in *Martin*, the parents put both husband's and wife's names on the assignment. As in *Martin*, when the couple divorced the parents wished they had not included the wife in the assignment.

Stephen contends that, under *Martin*, the presumption that a gift of property is community property can be rebutted by clear and convincing evidence that the donors intended a conditional gift on the unstated condition that the couple remain married.[4] Stephen is correct that the *Martin* court directed the trial court, on remand, to determine the intent of the donors and whether they intended "to convey the land to *both spouses*, but on the unstated condition, expectation, or desire that the parties would remain married". *Martin*, 32 Wn. App. at 96. However, the *Martin* court did not specifically hold, as Stephen and headnote two of the *Martin* opinion contend, that such an unstated condition would rebut the presumption of community property. Nor did the court say that such an unstated condition would cause the property to become separate property.

Reading *Martin* in the manner suggested by Stephen would be contrary to public policy. A policy whereby *unstated* conditions could defeat an otherwise absolute assignment of property would allow donors to take back their gifts whenever they become displeased with the donees, or one of them. We do not believe the *Martin* court intended such a result.

---

[4]It is true that a condition subsequent not affecting the donee's title to the property may be valid, and a gift that is absolute may be defeated by the happening of a later certain event. 38 C.J.S. *Gifts* § 37 (1943). However, in the present case the trial court especially noted that the assignment of the trust contained no conditions subsequent.

Moreover, the *Martin* court stated that "[a]n executed gift becomes effective and irrevocable upon delivery and divests the donor of all present control." *Martin*, at 96 (citing *Basket v. Hassell*, 107 U.S. 602, 27 L. Ed. 500, 2 S. Ct. 415 (1883)). In addition, the *Martin* court specified that "[i]f the court finds that the parents intended to convey the land to both spouses, the land must be characterized as a community asset." *Martin*, at 96. In sum, there is no specific language in *Martin* that would lead to the result proposed by Stephen.

Without a contemporaneous clearly stated intent by the donors to the contrary, the gift of real property to a wife and husband is, under Washington law, a gift to the community. *See Salvini*, 65 Wn.2d at 448; *Martin*, 32 Wn. App. at 95; *Enrich*, 2 Wn. App. at 959-60. In the present case, the trial court followed this rule. The trial court also found that Stephen's parents understood that they were assigning the promissory note/deed of trust to both Stephen and Theresa. These findings are supported by substantial evidence.

Finally, the absence of a finding in favor of the party with the burden of proof as to a disputed issue is the equivalent of a finding against that party on that issue. *George v. Helliar*, 62 Wn. App. 378, 384, 814 P.2d 238 (1991); *Taplett v. Khela*, 60 Wn. App. 751, 759, 807 P.2d 885 (1991). Here, there is no finding that, but for the escrow agent's advice, Theresa would *not* have been included in the gift. Rather, Mildred Olivares' testimony, read as a whole, supports the trial court's finding that the gift was intended to be for both parties *so long as their marriage endured*. However, there is no evidence that such a condition was ever stated to Theresa. In the absence of such evidence, we will not disturb the trial court's finding of fact. The trial court properly interpreted *Martin* and properly applied the principles of *Martin* in the instant case.

Next, Stephen contends that the trial court abused its discretion under RCW 26.09.080 in allocating the spouses' property because the marriage was of very short duration. The

trial court must ensure that the final division of the property is "fair, just and equitable under all the circumstances." *Hadley*, 88 Wn.2d at 656 (quoting *Baker*, 80 Wn.2d at 745-46). The trial court has broad discretion with respect to property division in a dissolution action and will be reversed only upon a showing of manifest abuse of discretion. *Landry*, 103 Wn.2d at 809; *Kraft*, 61 Wn. App. at 50; *Tower*, 55 Wn. App. at 700.

Notwithstanding the short duration of the marriage and the source of the property at issue, the record reflects that Theresa was in difficult financial circumstances and Stephen had other significant assets, including an unencumbered home worth $225,000. In contrast, Theresa had few assets, and those that she had brought into the marriage had been expended for the benefit of the community. Although Theresa was unable to provide the court with sufficient evidence to measure the value of the community interest in the Arlington house, clearly there was substantial community labor during the marriage that resulted in improvements to that home. The court's inability to value the community lien on this home provides a sound reason for awarding Theresa a reasonable amount of property from some other source, in order that she not be left destitute.

In sum, the trial court did not err in its characterization of the promissory note/deed of trust as community property. Although the marriage was of short duration, a 50-50 division of this community asset was well within the trial court's discretion, notwithstanding its source, in view of the parties' disparate economic circumstances. We will not substitute our judgment for that of the trial court.

C. The Classic White 1968 Ford Mustang.

Stephen asserts that the trial court erred in characterizing the 1968 classic Ford Mustang as community property because the car was purchased with Stephen's separate credit and was never intended as a gift to Theresa. Theresa responds that her testimony, the vehicle registration, and car's title all support the court's finding that the white Ford Mustang was a gift to her from Stephen.

The characterization of property as community or separate is determined at the date of acquisition and depends on whether it was acquired by community funds and community credit or separate funds and separate credit. Once a property is determined to be of a separate character, it is presumed to retain that character until there is direct and positive evidence to the contrary. *Cummings v. Anderson*, 94 Wn.2d 135, 139-40, 614 P.2d 1283 (1980).

■ When one spouse uses separate property to acquire an asset, but takes title to that asset in the name of the other spouse, under Washington law there is a rebuttable presumption of a gift to the spouse in whose name the title is taken. *Scott v. Currie*, 7 Wn.2d 301, 307-08, 109 P.2d 526 (1941); *Plath v. Mullins*, 87 Wash. 403, 409, 151 P. 811 (1915); *Denny v. Schwabacher*, 54 Wash. 689, 692, 104 P. 137 (1909).

■ Theresa testified that her husband purchased the car as a gift for her. Stephen denies this. Apparently the trial court felt that Theresa was the more credible witness and, therefore, that Stephen's testimony was insufficient to rebut the presumption of a gift. Credibility issues are for the trier of fact, not the appellate tribunal. *In re Sego*, 82 Wn.2d 736, 740, 513 P.2d 831 (1973).

In conclusion, the trial court's finding that the car was not Stephen's separate property is supported by the evidence. There is no manifest abuse of discretion here.

The trial court is affirmed.

WEBSTER, C.J., and BAKER, J., concur.

Review denied at 122 Wn.2d 1009 (1993).