IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

DANIEL MOORE,             )    No. 70439-7-I
                              )
          Respondent,    )
                              )
        v.                  )    UNPUBLISHED OPINION
                              )
PAMELA MOORE,           )
                              )
          Appellant.      )    FILED: September 2, 2014

SCHINDLER, J. — Pamela (Pam) Moore appeals entry of the decree of dissolution,

findings of fact and conclusions of law, and the child support order. Pam[1] challenges

(1) the characterization and valuation of the assets and liabilities, (2) the division of

property, (3) the calculation of income for purposes of child support, (4) the decision to

not award additional maintenance, and (5) an award of attorney fees for intransigence.

Because it appears the court's valuation of the Fidelity 401(k) retirement account at

$24,058 is not supported by the record, we remand on that issue, but affirm in all other

respects.

FACTS

Pam and Daniel (Dan) Moore were married for 12 years. At the time of the

dissolution trial in September 2012, their only child was five-years-old.

_____

[1] We refer to the parties by their first names for clarity. No disrespect is intended.

During the majority of the marriage, Dan worked in a contract position at Microsoft as an audio engineer. The contract position ended in June 2010. In August 2010, Dan entered into a new temporary contract with Microsoft. Beginning in May 2011, Dan entered into contracts with GreenButton Ltd. and Tashkent Park LLC. Pam held several management positions in the retail business during the first half of the marriage but in 2002, she stopped working full time.

Pam filed for legal separation in August 2011. Pam remained in the family home. Pam requested the court order Dan to pay child support as well as spousal maintenance. Dan submitted a financial declaration stating that his total gross monthly income was $13,854. A family court commissioner entered a temporary order of child support requiring Dan to pay $1,030.97 a month in child support, as well as maintenance to Pam in the amount of $1,750. The commissioner also entered a temporary restraining order prohibiting both Pam and Dan "from transferring, removing, encumbering, concealing or in any way disposing of any property except in the usual course of business or for the necessities of life and requiring each party to notify the other of any extraordinary expenditures made after the order is issued." The commissioner appointed a parenting evaluator to investigate allegations of substance abuse and to make parenting plan recommendations as to the best interests of the child.

Dan filed a motion to modify the temporary child support and maintenance order and requested the court allow the sale of the family home. Dan stated that his gross

monthly income had not changed, but that both of the contracts with GreenButton and Tashkent Park would expire at the end of April 2012 and he was not certain either contract would be renewed. Dan filed a supplemental declaration stating that Pam was employed in a full-time position earning $65,000 per year.

At the hearing on the motion to modify, Pam's attorney stated that Pam had lost the job and was again unemployed. The commissioner denied Dan's motion to modify the temporary child support and maintenance order and ordered him to secure a home equity loan to help pay the taxes on the home for 2010.

Before the scheduled trial in September 2012, Dan requested attorney fees in the amount of $5,000 for Pam's failure to disclose any witnesses or exhibits and her failure to appear at two scheduled depositions. The court granted Dan's motion and awarded him $2,500 in attorney fees. The findings state, in pertinent part:

> 2. The case schedule provided that the last day for disclosure of witnesses was May 21, 2012. The petitioner failed to provide a list of possible witnesses at that time and to the present date has still not provided a list of witnesses to the court or the respondent or any reason why there has not been a disclosure of witnesses.
> 3. . . . The petitioner failed to provide any information as to non-experts or experts other than: "To be provided." None of this information has been provided to the respondent up to this date.
> . . . .
> 8. Willful or Deliberate. There is no question in the court's considerations that the petitioner knew that the list of witnesses needed to be delivered to the respondent. She received the respondent's disclosure of witnesses and was told by her attorney's office that the witness list needed to be delivered to the respondent. There is no question in the court's mind that the petitioner's disregard of her obligation to provide this information was willful. . . .
> 9. Prejudice. Ms. Moore's disregard to the court's order as to witnesses prejudiced the respondent. The trial date was set at July 23,

2012. A motion to continue the trial date was granted by the trial judge after being sent to her for trial. The basis for the continuance was the unfortunate illness of counsel. At that time, the discovery deadlines and the deadlines for disclosing witnesses had long passed.

The primary dispute during the four-day trial in September 2012 concerned the parenting plan. The parenting evaluator testified and recommended that Dan be designated as the primary residential parent. The parenting evaluator expressed concern about Pam's "relatively short lived" sobriety and "ability to meet [the child's] needs at this time."

The parties also disagreed about the nature and extent of community assets and liabilities and the division of property. Both sides accused the other of withholding income and misstating assets. Dan testified his contract with Tashkent Park was not renewed but he was still working with GreenButton. Dan testified that his contract with GreenButton states he would earn "a base salary of $60,000 a year" as well as a percentage of the revenue.

The court agreed with the recommendation of the parenting evaluator and designated Dan as the primary residential parent. The court rejected as "speculation" the claim that Dan was withholding income. The court calculated child support based on Dan's gross monthly income of $5,000. The court awarded Pam six months of maintenance to allow her time to find employment. Pending the sale of the family home, the court ordered Dan to pay the mortgage. The court reserved ruling on the exact division of the proceeds from the sale of the home. Finding there was "certainly a lot of need, but virtually no ability to pay," the court did not award attorney fees to either

4

Pam or Dan. On February 14, 2013, the court entered the decree of dissolution, findings of fact, conclusions of law, order of child support, and parenting plan.

Pam filed a motion for reconsideration of the decree of dissolution, findings of fact, parenting plan, and order of child support or, in the alternative, a new trial. Pam argued that the final documents contained several errors that resulted in a disparate property division. Specifically, Pam contested the reimbursement of $26,011.32 to Dan for mortgage payments and the calculation of $8,250 for the total amount of arrears owed in unpaid maintenance and child support. Pam argued the correct amount of unpaid maintenance and child support was $21,740.

The court granted the motion for reconsideration in part. The court corrected the reimbursement of $26,011.32 in mortgage payments to Dan and the calculation of maintenance and child support arrearages. The court ordered Dan to pay Pam $21,740 in "Maintenance/Child support." In the amended decree of dissolution filed on June 6, 2013, the court divides the net assets equally, awarding Pam $120,338 and Dan $120,337.

Throughout the proceedings below, Pam was represented by an attorney. Representing herself pro se, Pam appeals.

ANALYSIS

Characterization and Valuation of Property

Pam asserts the court erred in finding that the Citibank credit card obligation was a community debt. Pam also challenges the court's valuation of Dan's recording equipment and his 401(k) account.

We review the court's findings of fact for substantial evidence. In re Marriage of Skarbek, 100 Wn. App. 444, 447, 997 P.2d 447 (2000). "Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." Bering v. SHARE, 106 Wn.2d 212, 220, 721 P.2d 918 (1986). Where the trial court has weighed the evidence, the reviewing court's role is simply to determine whether substantial evidence supports the findings of fact and, if so, whether the findings in turn support the trial court's conclusions of law. In re Marriage of Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999). Findings of fact supported by substantial evidence will not be disturbed on appeal. Thorndike v. Hesperian Orchards, Inc., 54 Wn.2d 570, 575, 343 P.2d 183 (1959). A court should "not substitute [its] judgment for the trial court's, weigh the evidence, or adjudge witness credibility." Greene, 97 Wn. App. at 714.

A court has broad discretion in valuing property in a dissolution action, and its valuation will not be reversed on appeal absent a manifest abuse of discretion. In re Marriage of Gillespie, 89 Wn. App. 390, 403, 948 P.2d 1338 (1997). A manifest abuse of discretion occurs when the discretion was exercised on untenable grounds. In re

Marriage of Muhammad, 153 Wn.2d 795, 803, 108 P.3d 779 (2005). A trial court does not abuse its discretion by assigning values to property within the scope of evidence. In re Marriage of Soriano, 31 Wn. App. 432, 435, 643 P.2d 450 (1982).

Pam argues the court erred in finding that the $23,640 Citibank credit card obligation was community debt.

The trial court's characterization of property as community or separate is a question of law that we review de novo. Skarbek, 100 Wn. App. at 447. A debt incurred by either spouse during marriage is presumed to be a community debt. Oil Heat Co. of Port Angeles, Inc. v. Sweeney, 26 Wn. App. 351, 353, 613 P.2d 169 (1980). A party may overcome this heavy presumption only by showing by clear, cogent, and convincing evidence of the property's separate character. In re Marriage of Zahm, 91 Wn. App. 78, 86, 955 P.2d 412 (1998).

Prior to trial, Pam acknowledged that she and Dan had a "joint credit card with Citibank that is in Dan's name." Pam admitted that she charged $12,000 to the Citibank card to retain an attorney just before the separation in August 2011. The court ordered Pam to pay $12,000 of the total Citibank obligation and $2,743 in interest, and ordered Dan to pay the remaining $11,640 along with $2,660 in interest. Because the record establishes the Citibank credit card debt was a community obligation, the court did not err in determining the debt was a community liability.

Pam argues the court abused its discretion by valuing the recording equipment at $9,330 and valuing Dan's 401(k) account at $24,058. There is no dispute that Pam

violated the restraining order by selling Dan's professional recording equipment, some of which was community property and some of which was separate property. Pam admitted to selling the recording equipment for approximately $1,000. Dan testified that the equipment was worth approximately $18,600. Dan testified that he had worked for a professional audio company for eight years, has been a professional musician his entire life, and has "good insight" into the value of the recording equipment he owned.

The court was "not persuaded [the equipment] was worth $18,660" but found "it was worth more than a thousand bucks." Because the property had already been sold and could not be separately appraised, the court valued the equipment at $9,330, an average between the two values testified to at trial. The court did not abuse its discretion in determining the value of the recording equipment.

Dan admitted that he liquidated his Fidelity 401(k) retirement account in violation of a court order. The court found that Pam "shall get the credit for the funds taken by [Dan] when he invaded the 401(k) and other assets." The court valued the 401(k) at $24,058.[2] The record does not appear to support the valuation of the 401(k) at $24,058. The evidence suggests that the amount Dan received in the 401(k) disbursement was actually $30,558. Further, after the court entered the amended decree, Dan admitted that the valuation of $24,058 was in error. We remand to address the valuation of the Fidelity 401(k) retirement account.

---

[2] The valuation of $24,058 was presumably calculated by subtracting the loan of $17,306 taken out against the 401(k) during the marriage from the total value of the 401(k) account of $41,344 at the time of separation.

Division of Property

Pam asserts that the distribution of property was not just and equitable. Pam argues the court failed to consider her postseparation liabilities and erred in crediting Dan for the full amount she withdrew from the parties' joint savings account.

The division of property in a dissolution action is governed by statute. RCW 26.09.080 requires the court to consider a number of factors in making a "just and equitable" distribution of the marital property, including (1) the nature and extent of the community property, (2) the nature and extent of the separate property, (3) the duration of the marriage, and (4) the economic circumstances of each spouse at the time the division of the property is to become effective.

All of the property, both community and separate, is before the court for distribution. In re Marriage of Olivares, 69 Wn. App. 324, 328, 848 P.2d 1281 (1993). The trial court has broad discretion in distributing marital property and its decision will be reversed only if there is a manifest abuse of discretion. In re Marriage of Griswold, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002). The trial court is in the best position to determine under the circumstances what is " 'fair, just and equitable.' " In re Marriage of Brewer, 137 Wn.2d 756, 769, 976 P.2d 102 (1999) (quoting In re Marriage of Hadley, 88 Wn.2d 649, 656, 565 P.2d 790 (1977)).

Pam claims the division of property was not equitable because the court did not take into account the debt she incurred after the parties separated. But the record shows that the court considered the economic circumstances of each party, including

9

Pam's separate debt and attorney fees. The family home was the main asset the parties owned. The trial court ruled the net proceeds from the house should be distributed to achieve an "equal division," awarding Pam $120,338 and Dan $120,337.[3] The court also awarded Pam six months of maintenance to give her time to find employment. In dividing the property, the court additionally took into account the fact that Pam withdrew nearly the entire home equity loan of $48,000 and took the entire 2010 joint tax refund of $11,796. Substantial evidence supports the court's division of assets.

Before trial, the court ordered Dan to take out a loan on the equity of the family home to pay the taxes on the home for 2010. The court authorized Pam to draw $15,000 from the loan to pay attorney fees and experts, and allowed Dan to withdraw up to $20,000 to pay support obligations to Pam. The court stated that it would characterize the $20,000 to Dan "as an advanced draw against his share unless otherwise ruled on by the trial court."

Dan obtained a $48,000 home equity loan from Boeing Employees' Credit Union (BECU). The testimony established that Pam used nearly all of the $48,000 to pay for her attorney fees. The testimony at trial also established that Pam withdrew the entire

---

[3] Pam's contention that the court awarded 68 percent of the community property to Dan and only 32 percent to her is not supported by the record.

2010 joint tax refund of $11,796 from the joint BECU savings account.[4]

In short, the court did not abuse its discretion in determining a just and equitable distribution of the parties' assets and liabilities.

Child Support

Pam challenges the calculation of Dan's gross income for the purpose of the child support order. Pam contends the court erred in calculating Dan's gross income at only $5,000 per month and not including a 10 percent bonus.

We review the child support order for abuse of discretion. In re Marriage of Bell, 101 Wn. App. 366, 371-72, 4 P.3d 849 (2000). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). A court's decision is manifestly unreasonable if it is based on an incorrect legal standard. Littlefield, 133 Wn.2d at 47. In calculating gross income, the court must include "income from any source, including . . . [b]onuses." RCW 26.19.071(3)(r).

The court based its calculation of Dan's gross income on his actual reported income. At the time of trial, Dan submitted a revised financial declaration showing that his actual total monthly gross income was $5,000. Dan also testified that his contract with GreenButton states he will earn 10 percent "of all revenue brought in for the

---

[4] Pam also asserts the court erred in ordering her to pay 50 percent of the federal taxes for 2011, but she does not present any argument as to why the court erred in ruling that the parties "should be equally responsible for that liability." Pam further contends the court erred in reversing only a portion of the mortgage reimbursement to Dan when it granted her motion for reconsideration in part, asserting there was a "mathematical error." But Pam does not explain the alleged error or support her argument with any citation to the record. Where a party assigns error to a finding but presents no argument in their opening brief on any claimed assignment, that assignment of error is waived. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

product that I sell." But Dan submitted evidence that because the "product on which [his] commissions will be based is an entirely new product offering and market sector for the company," there was "no precedent or sales history on which an approximation of future commissions can be established." The court found Dan's testimony about his income credible. The court found, "The evidence is that the father makes what he makes" and there is "no evidence that the father [is] holding back on income."

The court did not err in calculating Dan's gross income at $5,000 or in refusing to speculate a potential future bonus when there was no evidence the court could use to calculate a bonus amount.

Pam also argues the court erred in imputing income to her because she had been out of the workforce since 2006.[5] When assessing the income and resources of each household for the purpose of calculating child support, the court must impute income to a parent when that parent is voluntarily unemployed. RCW 26.19.071(6); In re Marriage of Pollard, 99 Wn. App. 48, 52, 991 P.2d 1201 (2000). "The court shall determine whether the parent is . . . voluntarily unemployed based upon that parent's work history, education, health, and age, or any other relevant factors." RCW 26.19.071(6); Pollard, 99 Wn. App. at 52-53.

Pam has a degree in business and multiple years of prior work experience in managerial positions. There was no evidence that Pam had any health condition or other factor that would prevent her from working. Pam also reported gross monthly

---

[5] Pam reported her last work month was March 2006.

12

earnings of $1,800 at her most recent job in 2006. The court did not err in imputing gross income to Pam in the amount of $1,690.

Maintenance

Pam challenges the trial court's decision to award only six months of maintenance in the amount of $1,750 per month.

An award of spousal maintenance is within the broad discretion of the trial court. In re Marriage of Bulicek, 59 Wn. App. 630, 633, 800 P.2d 394 (1990). The only limitation on the amount and duration of maintenance under RCW 26.09.090 is that the award must be just. In re Marriage of Luckey, 73 Wn. App. 201, 209, 868 P.2d 189 (1994). The relevant statutory factors the court must consider include the financial resources of each party; the age, physical and emotional condition, and financial obligations of the spouse seeking maintenance; the standard of living during the marriage; the duration of the marriage; and the time needed to acquire education necessary to obtain employment. RCW 26.09.090; In re Marriage of Vander Veen, 62 Wn. App. 861, 867, 815 P.2d 843 (1991).

Pam argues that the court failed to consider the standard of living during the marriage and the postdissolution economic condition of the parties. The record does not support her argument. The court ruled, in pertinent part, "I've considered the factors for awarding maintenance under RCW 26, and I'm satisfied that a brief period of transitional maintenance is warranted in this case; understanding, however, that the wife will be receiving past due amounts in addition to that . . . award." The court also

13

found, "There was no persuasive credible evidence for rehabilitative maintenance or maintenance for a longer period of time."

Further, Pam does not challenge the court's finding that Dan had "little present ability to pay maintenance," or the finding that she is "well educated and intelligent with a history of successful managerial positions [and] the Court believes that within some short period of time, [Pam] will be employed and will enjoy an income close to or similar to that which she was making when she left the work force."

Because the record reflects that the trial court addressed the statutory factors, we conclude the decision to award $1,750 per month in maintenance for only six months was not an abuse of discretion.[6]

Attorney Fees

Pam asserts that the trial court abused its discretion by awarding $3,850 in attorney fees to Dan based on intransigence.[7]

It is well settled that a trial court may award attorney fees if the intransigence of one party increased the legal fees of the other party. Burrill v. Burrill, 113 Wn. App. 863,

---

[6] On appeal, Pam challenges the calculation of arrearages for child support and maintenance and the reimbursement of $26,011.32 in mortgage payments to Dan. But the court granted her motion to correct amounts in the order granting in part the motion for reconsideration. Although the amended decree of dissolution states that the unpaid maintenance amount is $8,250, the order "adopts the spreadsheet attached" that states the combined unpaid maintenance/child support amount is $21,740, the same amount requested in Pam's motion for reconsideration.

[7] Pam also argues the court erred in entering an order on July 31, 2013 awarding an additional $4,410 in attorney fees to Dan based on intransigence. But Pam does not appeal that order. See RAP 2.4(a) (the appellate court will review decisions or parts of the decision designated in the notice of appeal). Because the exception described in RAP 2.4(b) is not met, we need not review the undesignated order. See Right-Price Recreation, LLC v. Connells Prairie Cmty. Council, 105 Wn. App. 813, 819, 21 P.3d 1157 (2001). Nonetheless, we note that because the underlying facts justifying the award are not disputed, substantial evidence supports the finding of intransigence.

873, 56 P.3d 993 (2002). "Intransigence includes foot dragging and obstruction, filing repeated unnecessary motions, or making the trial unduly difficult and costly by one's actions." In re Marriage of Bobbitt, 135 Wn. App. 8, 30, 144 P.3d 306 (2006). If a court finds intransigence, " 'the financial resources of the spouse seeking the award are irrelevant.' " In re Marriage of Greenlee, 65 Wn. App. 703, 708, 829 P.2d 1120 (1992) (quoting In re Marriage of Morrow, 53 Wn. App. 579, 590, 770 P.2d 197 (1989)). A party challenging the trial court's decision to award attorney fees "bears the burden of proving the trial court exercised its discretion in a way that was 'clearly untenable or manifestly unreasonable.' " In re Marriage of Crosetto, 82 Wn. App. 545, 563, 918 P.2d 954 (1996) (quoting In re Marriage of Knight, 75 Wn. App. 721, 729, 880 P.2d 71 (1994)).

After the court granted in part Pam's motion for reconsideration, the court directed Pam to submit proposed amended findings of fact and a decree of dissolution within 14 days. The court specifically ruled that "[t]he proposed orders shall not reflect any amendment other than for this [sic] issues in Paragraph 1 of this order." .

There is no dispute that Pam failed to provide an amended decree as directed or that this failure increased Dan's attorney fees. Pam's proposed amended findings of fact and decree of dissolution included additional changes to the valuation and distribution of the marital property. Dan filed a motion for attorney fees in the amount of $3,850, arguing he incurred more than nine hours of attorney fees as a result. The court granted Dan's request for attorney fees in the amount of $3,850 based on the fact

that Dan was "required to incur additional fees because of the acts of [Pam] which have increased the attorney fees of [Dan] and because of the failure to act [by Pam as] provided for in the Order Granting in part Motion for Reconsideration." Substantial evidence supports the court's finding of intransigence.

We remand to correct the valuation of the 401(k) retirement account. In all other respects, we affirm.[8]

WE CONCUR:

_____
Trickey, J

---

[8] We deny Pam's request for fees on appeal.