169 P.3d 847 (2007)
In the Matter of the ESTATE OF Jeanette L. BORGHI, Deceased.
Bobby G. Borghi, Personal Representative of the Estate of Jeanette L. Borghi, Respondent,
v.
Arthur R. Gilroy, Appellant.
No. 59223-8-I.
Court of Appeals of Washington, Division 1.
October 22, 2007.
*848 Robert Kendall Ricketts, Attorney at Law, Tacoma, WA, for Appellant.
Sheila Conlon Ridgway, The Law Office of Vance & Ridgway PS, Seattle, WA, Paulette Elaine Peterson, Law Offices, Bainbridge Island, WA, for Respondent.
APPELWICK, C.J.
¶ 1 Jeannette L. Borghi died intestate. Prior to her marriage to Mr. Borghi, she entered into a real estate contract to purchase property. After her marriage, a statutory warranty deed was issued to both Mr. and Mrs. Borghi. Upon Mrs. Borghi's death, the court determined that the real property was community property. Arthur Gilroy, Mrs. Borghi's son from a previous marriage contends that the property was his mother's separate property. Early Washington Supreme Court precedent requires a finding that the property was the separate property of Mrs. Borghi. We reverse.

FACTS
¶ 2 Mr. and Mrs. Borghi were married on March 29, 1975. On June 12, 1975, the Cedarview Development Co. executed a Special Warranty Deed to "Robert G. & Jeannette L. Borghi, husband and wife." The deed was recorded on August 13, 1979. The deed states that it was given in fulfillment of a real estate contract dated March 16, 1966. However, the real estate contract was not recorded and no copy of the contract has been found. The estate claims that the real estate contract would have been executed by either Mrs. Borghi as a single person under her previous name "Gilroy" or with her former husband. The record contains no evidence of the timing or frequency of the payments under the contract.
¶ 3 Mr. and Mrs. Borghi resided on the property as their primary residence from 1975 until 1990. In August 1979, Mr. and Mrs. Borghi used the property to secure a mortgage with Washington Mutual Savings Bank. They used the mortgage to purchase a mobile home to put on the property. Mr. and Mrs. Borghi made most of the payments for the mortgage from their joint bank account. A satisfaction of the mortgage was recorded in July 1999.
¶ 4 Mrs. Borghi died intestate on June 25, 2005. Her surviving heirs were Mr. Borghi and Arthur Gilroy, her son from a previous marriage. Mr. Borghi became the personal representative. He obtained a title report which shows that the title of the land is vested in "Robert G. Borghi . . . as his separate estate and the Heirs and Devisees of Jeanette L. Borghi, deceased." Mr. Borghi filed a petition for declaratory judgment to determine title to the real property. In September 2006, a superior court commissioner ruled that the real property was the community property of Mr. and Mrs. Borghi. Under intestate succession, the property would pass to Mr. Borghi. Arthur Gilroy filed a motion for revision of the ruling which was denied. Gilroy appeals, seeking a declaration that the real property was Mrs. Borghi's separate property such that he would inherit an undivided one-half interest in the property.
¶ 5 Mr. Borghi died in October 2006. Mrs. Borghi's sister became the successor personal representative for Mrs. Borghi's estate. The personal representatives for both estates maintain that the real property was community property.

DISCUSSION
¶ 6 We review de novo a trial court's classification of property as community or separate. In re Marriage of Chumbley, 150 Wash.2d 1, 5, 74 P.3d 129 (2003). Findings of fact are reviewed for substantial evidence. In re Marriage of Skarbek, 100 Wash.App. 444, 447, 997 P.2d 447 (2000). The character of property is established at *849 acquisition. Id. Property acquired before marriage is separate property. See, Hurd v. Hurd, 69 Wash.App. 38, 50, 848 P.2d 185 (1993) review denied, 122 Wash.2d 1020, 863 P.2d 1353 (1993); RCW 26.16.010; RCW 26.16.020. "When it appears that property was once separate, it is presumed to maintain that character until there is some direct and positive evidence to the contrary." In re Estate of Madsen, 48 Wash.2d 675, 676-77, 296 P.2d 518 (1956) (citing Hamlin v. Merlino, 44 Wash.2d 851, 272 P.2d 125 (1954)). The proponent of community property has the burden of proving the change in character of the property. Jones v. Davis, 15 Wash.2d 567, 569, 131 P.2d 433 (1942). A writing is required to show the parties' mutual intention to convert property from separate into community property. In re Estate of Verbeek, 2 Wash.App. 144, 158, 467 P.2d 178 (1970).
¶ 7 "The ownership of real property becomes fixed when the obligation becomes binding, that is, at the time of execution of the contract of purchase." Beam v. Beam, 18 Wash.App. 444, 453, 569 P.2d 719 (1977). The time of payment, delivery or conveyance does not affect the initial characterization of the property. In re Estate of Binge, 5 Wash.2d 446, 484, 105 P.2d 689 (1940). The parties do not dispute that Mrs. Borghi entered into the real estate contract prior to the marriage and that Mr. Borghi was not a party to the contract. Even though the warranty deed was issued after marriage, the obligation was incurred prior to the marriage. As a result, the real estate was, at least initially, Mrs. Borghi's separate property.
¶ 8 Once property has been established to be separate property, the proponent of community property status must demonstrate some "direct and positive evidence" of a change in its character. Binge, 5 Wash.2d at 485, 105 P.2d 689. The estate contends that acceptance of the deed issued to Mr. and Mrs. Borghi, as husband and wife provides evidence of the community nature of the property. To rebut this argument, Gilroy relies on the proposition that "mere joinder in a contract, mortgage or deed by husband and wife . . . is insufficient to convert property into community property." Verbeek, 2 Wash.App. at 155, 467 P.2d 178. Gilroy claims that a change from separate to community property requires a specific, voluntary act of the owning spouse to manifest intent, and that a warranty deed prepared by the grantor does not overcome the presumption of separate property.
¶ 9 Two published cases reach opposite results on similar facts. In re Estate of Deschamps, a 1914 Washington Supreme Court decision, is directly on point. 77 Wash. 514, 137 P. 1009 (1914). When she married, Anna Deschamps already owned an apartment building. Since property status is fixed at acquisition, the building was Mrs. Deschamps' separate property. Deschamps, 77 Wash. at 515, 137 P. 1009. Upon Mrs. Deschamps' death, her husband claimed the building as community property, partly based on the fact that the deed named him as a joint grantee. Deschamps, 77 Wash. at 517, 137 P. 1009. However, "unless divested by deed, by due process of law, or the working of an estoppel" the property remains separate property. Id. at 515, 137 P. 1009.
¶ 10 In support of his claim of community property, Mr. Deschamps presented evidence of his wife's intention to convert her separate property to community property. One witness testified, "as we were going down to get the deed signed up, Mr. Deschamps asked Mrs. Deschamps if she was willing for his name to appear in the deeds both the same, and she said Yes, to have them; he wanted his name in the deed." Id. at 517, 137 P. 1009. Another witness corroborated the evidence that Mr. Deschamps inclusion on the deed was not inadvertent or accidental.
[S]o when the deed was drawn, I asked Mrs. Deschamps, . . . 'Now Mrs. Deschamps, do you want this deed in your name or in your husband's?' I asked Mr. Deschamps first, `Do you want this deed in your name?' He says, `Ask my wife. Whatever she says.' . . . So she says, `Why certainly,' . . . the property belongs equal between us both.
Id. at 517-18, 137 P. 1009. This direct evidence, from two independent witnesses to the transaction, demonstrated that Mrs. Deschamps knew of the option to title the property *850 in her name only and intentionally added her husband to the title. Yet, the court found that the building remained separate property. The property had been purchased with Mrs. Deschamps' separate property and the court concluded that "[i]t is not shown that the wife ever intended to give up a one-half interest in the property or that she understood that her husband could assert a greater interest in the property than would be represented by his advances, if any." Id. at 518, 137 P. 1009. The inability of the wife to testify as to her intentions led the court to err on the side of protecting her assets.
The mouth of the wife is closed in death, and there is no one to speak for her unless it be the law, so often declared, that, where property standing in the name of either spouse, or in the name of both spouses, is presumed to be community property, such presumption is rebuttable and that courts will not be bound by the terms of the deed but will look beyond it and ascertain, if possible, the true intent and purpose of the parties. Having this principle in mind, and considering the whole record, we are not satisfied that the husband has made out a case that would warrant this or any other court in decreeing him to be the owner of a one-half interest in the property.
Id. The direct evidence from the witnesses in Deschamps showed that Mrs. Deschamps considered the property to be that of the community, yet the court maintained its separate character because of the separate nature of the funds used in its acquisition.
¶ 11 Seventy-nine years later, in contrast to Deschamps, the Court of Appeals reached a different conclusion from similar facts in Hurd, 69 Wash.App. at 51, 848 P.2d 185. In Hurd, the husband purchased the vendor's rights under a real estate contract for the sale of a lot on Guemes Island several years prior to marriage. Hurd, 69 Wash.App. at 42, 848 P.2d 185. While the Hurds were married, the purchaser of the lot could not make the required payments. Id at 51-52, 848 P.2d 185. Mr. Hurd directed that the deed be conveyed to both himself and his wife, for "love and consideration." Id. From this set of facts, the court made a presumption of community property. "Mr. Hurd's act of requesting that the deed be conveyed back in the names of both parties permits a presumption that he intended to make a gift to the community." Id. at 52, 848 P.2d 185. In reaching this conclusion, the court articulated a new rule:
[w]e now hold that a spouse's use of his or her separate funds to purchase property in the names of both spouses, absent any other explanation, permits a presumption that the purchase or transaction was intended as a gift to the community. We also hold that there must be clear and convincing proof to overcome such a presumption.
Id. at 51, 848 P.2d 185.
¶ 12 Based on this rule, the indirect evidence of the community name on the deed is sufficient to raise the presumption of a community property. Id. at 52, 848 P.2d 185.
¶ 13 Although the Court of Appeals presumption is directly contrary to Deschamps, Hurd does not discuss or cite Deschamps. Washington Practice gives a strong critique of Hurd. "If the Hurd rule[1] was applied to the facts in Deschamps, the result would have undoubtedly been different. Hurd did not mention, let alone distinguish, Deschamps." Kenneth W. Weber, 19 Washington Practice: Family and Community Property Law Sec. 10.7, at 142 n. 4 (1997). Weber contends that Hurd "appears most unfortunate" and is unsupported by the cited case law. 19 Washington Practice: Family and Community Property Law Sec. 10.7, at 142 n. 4 (1997). The Washington Supreme Court denied review of Hurd, but since the opinion did not mention Deschamps, the conflict was not called to the attention of the court. To date, our Supreme Court has not revisited Deschamps and the high bar it has set for the evidence required to convert separate property to community property by deed. Furthermore, our Supreme Court does not overrule binding precedent sub silentio. State v. Studd, 137 Wash.2d 533, 548, 973 P.2d 1049 (1999); Lunsford v. Saberhagen Holdings, Inc., 139 Wash.App. 334, 160 P.3d 1089 (2007). As a *851 result, we must agree that Hurd was improperly decided. We are constrained by the binding precedent set by Deschamps.
¶ 14 However, given the strength of the direct evidence from independent witnesses and the indirect evidence of the community name on the deed, we are firmly convinced that Deschamps was wrongly decided. A finding of separate property in the face of such clear evidence does not advance the policy concerns articulated. The harm to be avoided is a change in the character of the property when a change was not intended. Inclusion of both names on a deed could create an inadvertent change without a request, writing or document showing intent. Indeed, the harm is most likely in scenarios where an express documentation of the gift is lacking. When both spouses appear on a deed for previously separate property, and no writing exists, we should strive to determine the intent of the separate property holder. A weighing of the evidence is required to determine donative intent. A summary presumption that a gift was not intended does not serve to protect property holders but may thwart legitimate attempts to gift to the community as in Deschamps.
¶ 15 Deschamps is clearly not a case where the deed was titled to the community through inadvertence or pressure from a third party or to accommodate the requirements of a mortgagor. The testimony shows that Mrs. Deschamps believed that the property belonged equally to both herself and her husband. Deschamps, 77 Wash. at 517-18, 137 P. 1009. Based on the independent witness testimony, there is no doubt that she knew of her option to have title in her name only, yet she expressed her desire to include her husband. Id. Her intent that they equally own the property was clear. Similarly, Mr. Hurd's instructions to title the property in the name of the marital community was not inadvertent or at the request of a third party. He indicated no reason to include his wife other than "for love and consideration." This expresses a desire to benefit the community.[2]
¶ 16 We believe that Hurd appropriately protects separate property from inadvertent changes in character but allows for gifts by deed. When the separate property owner has expressed a desire to add their spouse to the title to the separate property, a presumption should arise that the names of both spouses on the title of property acquired by separate funds changes the character of the property to community. The presumption can be overcome by clear and convincing proof that community benefit was not intended, such as evidence of accommodation of a mortgagor, duress or deception, or an unsolicited act of a third party in preparing the document. This protects against inadvertence or avarice but allows separate property owners, like Mrs. Deschamps, to demonstrate a gift of property through the deed.
¶ 17 In this case, we know that Mrs. Borghi entered into a real estate contract on the property nine years prior to her marriage to Mr. Borghi. Fourteen days after the marriage, Mr. and Mrs. Borghi took title. The record provides no evidence that Mr. Borghi had made payments, either separate or community, or otherwise acquired an interest in the property. As Mrs. Borghi entered the contract either as a single person or with her previous husband, a deed in escrow at the time of purchase could not reflect the Borghi marital community. While there is no evidence that anyone communicated with Cedarview Development Co., the company had to be informed of the very recent remarriage in order to title the property to "Robert G. & Jeannette L. Borghi, husband and wife." To include Mr. Borghi, who was not a party to the real estate contract, the issuer had to have direction that Mr. Borghi was entitled to be on the deed. This would have required an affirmative act to apprise Cedarview of the existence of a spouse and the desirability of adding him to the deed. While someone other than Mrs. Borghi could have given Cedarview this direction, *852 there is no evidence that Mrs. Borghi protested the addition of her husband. She accepted the deed and eventually recorded the deed.
¶ 18 The evidence leads us to the conclusion that Mrs. Borghi intended the deed to reflect a gift of her separate property to the community. We believe this is the proper outcome. This is the result we would reach under Hurd. However, we are constrained by Deschamps to reach the opposite conclusion. We reluctantly conclude that the property was Mrs. Borghi's separate property.
¶ 19 We reverse.
WE CONCUR: AGID and COLEMAN, JJ.
NOTES
[1] Hurd, 69 Wash.App. 38, 848 P.2d 185.
[2] Since the trial court did not enter findings as to whether Mr. Hurd intended a gift to the community, the Court of Appeals requested that the trial court take additional evidence on Mr. Hurd's intent. "In view of Mr. Hurd's testimony that he often placed property in both parties' names for `love and consideration,' upon remand the court needs to determine what Mr. Hurd meant by that phrase." Hurd, 69 Wash.App. at 52, 848 P.2d 185.