[No. 80925-9. En Banc.]

Argued March 24, 2009.     Decided November 5, 2009.

*In the Matter of the Estate of* JEANETTE L. BORGHI.

BOBBY G. BORGHI, *as Personal Representative, Petitioner,* v. ARTHUR R. GILROY, *Respondent.*

*Paulette E. Peterson* (of *Law Offices of Paulette Peterson, PLLC*); *Sheila C. Ridgway* (of *Ridgway & Gafken, PS*); and *Catherine Wright Smith* and *Valerie A. Villacin* (of *Edwards Sieh Smith & Goodfriend, PS*), for petitioner.

*Robert K. Ricketts*, for respondent.

¶1 STEPHENS, J. — This case concerns a dispute between the estate of Jeanette L. Borghi (Estate) and her son, Arthur Gilroy, over the characterization of real property acquired by Jeanette Borghi prior to her marriage to Robert[1] Borghi and subsequently titled in both Robert and

---

[1] We use "Robert" throughout our opinion as that is the way his name appears in the dissolution proceedings and other legal documents that we reference.

Jeanette Borghi's names. At the center of this dispute are apparently conflicting presumptions—on the one hand, the well-established presumption that property acquired by a person before marriage is her separate property and, on the other hand, what has been described as a "joint title gift presumption" arising from a change in title to include both spouses' names. *See In re Marriage of Hurd,* 69 Wn. App. 38, 848 P.2d 185 (1993); Laura W. Morgan & Edward S. Snyder, *When Title Matters: Transmutation and the Joint Title Gift Presumption,* 18 J. AM. ACAD. MATRIMONIAL LAW 335 (2003). The Court of Appeals concluded it could not reconcile these presumptions. Though persuaded by the reasoning of *Hurd* to find that the property in question should be characterized as the Borghis' community property, it held to the contrary, based on our decision in *In re Estate of Deschamps,* 77 Wash. 514, 137 P. 1009 (1914). We affirm the Court of Appeals and take this opportunity to expressly reject the erroneous joint title gift presumption suggested by language in *Hurd* as well as *In re Marriage of Olivares,* 69 Wn. App. 324, 848 P.2d 1281 (1993).

## FACTS

¶2 Jeanette L. Borghi purchased a parcel of real property in 1966, subject to a real estate contract. The record contains no evidence concerning the terms of or payments under the contract. On March 29, 1975, Jeanette and Robert Borghi married. On July 12 of that year, Cedarview Development Company executed a special warranty deed to "Robert G. & Jeanette L. Borghi, husband and wife." Clerk's Papers at 80. The deed states that it is in fulfillment of the real estate contract.

¶3 The Borghis resided on the property from 1975 until 1990. In August 1979, they used the property to secure a mortgage to purchase a mobile home to locate on the property. The 1975 deed was recorded on August 13, 1979.

¶4 Jeanette Borghi died intestate on June 25, 2005. Her surviving heirs were Robert Borghi and Arthur Gilroy, her son from a previous marriage. Robert Borghi was appointed

personal representative of Jeanette Borghi's estate and filed a petition for declaratory judgment on behalf of the Estate to determine rights in the real property.[2] The superior court commissioner determined that the property was the community property of Robert and Jeanette Borghi, and passed to Robert Borghi under the laws of intestate succession. Arthur Gilroy moved for revision of this decision, which the superior court denied. He then appealed, arguing that the property was Jeanette Borghi's separate property at the time of her death, entitling him to a one-half interest.

¶5 The Court of Appeals reversed the superior court and "reluctantly conclude[d] that the property was Mrs. Borghi's separate property." *In re Estate of Borghi*, 141 Wn. App. 294, 304, 169 P.3d 847 (2007). We granted the Estate's petition for review at 163 Wn.2d 1052, 187 P.3d 751 (2008).

## ANALYSIS

¶6 The question in this case is whether the real property acquired by Jeanette Borghi prior to her marriage to Robert Borghi changed in character from her separate property to community property by the time of her death. More specifically, we must decide whether the inclusion of Robert Borghi's name on the June 12, 1975 deed created a presumption that the property had transmuted from separate to community property or, if not, whether there is sufficient evidence to overcome the underlying separate property presumption and establish an intent to change the character of the property from separate to community property.

■ ¶7 We begin with basic principles of Washington community property law. First, presumptions play a significant role in determining the character of property as separate or community property. 19 KENNETH W. WEBER, WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY LAW

---

[2] Robert Borghi passed away in October 2006, and Jeanette Borghi's sister now serves as the personal representative of the Estate. *In re Estate of Borghi*, 141 Wn. App. 294, 297, 169 P.3d 847 (2007).

§ 10.1, at 133 (1997) ("Possibly more than in any other area of law, presumptions play an important role in determining ownership of assets and responsibility for debt in community property law."). The presumptions are *true* presumptions, and in the absence of evidence sufficient to rebut an applicable presumption, the court must determine the character of property according to the weight of the presumption. *Id.*

¶8 Second, the character of property as separate or community property is determined at the date of acquisition. Harry M. Cross, *The Community Property Law in Washington*, 61 WASH. L. REV. 13, 39 (1986). Under the "inception of title" theory, property acquired subject to a real estate contract or mortgage is acquired when the obligation is undertaken. *Id.*; *see also In re Estate of Binge*, 5 Wn.2d 446, 105 P.2d 689 (1940); *Beam v. Beam*, 18 Wn. App. 444, 453, 569 P.2d 719 (1977). Here, the parties agree that the real property in question was Jeanette Borghi's separate property at the time she married Robert Borghi.[3] Once the separate character of property is established, a presumption arises that it remained separate property in the absence of sufficient evidence to show an intent to transmute the property from separate to community property. 19 WEBER, *supra*, at 134. As we stated in *Guye v. Guye*, 63 Wash. 340, 115 P. 731 (1911):

> Moreover, the right of the spouses in their separate property is as sacred as is the right in their community property, and when it is once made to appear that property was once of a separate character, it will be presumed that it maintains that character until some direct and positive evidence to the contrary is made to appear.

*Id.* at 352.[4] Significantly, the evidence must show the intent of the spouse owning the separate property to change its

---

[3] Whether the property was at some point the community property of Jeanette Borghi and her prior husband is not relevant in this case.

[4] The court in *Guye* used the phrase "direct and positive evidence" to describe the quantum of evidence necessary to overcome the applicable presumption. 63 Wash. at 352. This should be understood as reflecting a "clear and convincing

character from separate to community property. *Id.* at 349 (noting separate property remains separate "unless, by the voluntary act of the spouse owning it, its nature is changed"). Where, as here, real property is at issue, an acknowledged writing is generally required. Cross, *supra*, at 102 & n.485; *see also Volz v. Zang*, 113 Wash. 378, 383, 194 P. 409 (1920). While this could be accomplished through a quitclaim deed or other real property transfer, a properly executed community property agreement may also effectuate a transfer of real property. *See In re Estate of Verbeek*, 2 Wn. App. 144, 467 P.2d 178 (1970).

■ ¶9 The Estate argues that clear and convincing evidence of a transfer of Jeanette Borghi's separate property to community property exists based on the inclusion of Robert Borghi's name on the deed to the property subsequent to the marriage. The Estate relies on *Hurd* to argue that placing Robert Borghi's name on the title gives rise to a rebuttable presumption of a gift of Jeanette Borghi's separate property to the community. The Court of Appeals found this logic compelling but inconsistent with our precedent in *Deschamps*, a case not cited by either party below. Relying on *Deschamps*, the Court of Appeals rejected the Estate's argument and held the property in question was Jeanette Borghi's separate property.

¶10 The Court of Appeals' conclusion was correct, but its discussion of *Deschamps* and *Hurd* highlights a misunderstanding of the applicable presumption and underscores

---

evidence" standard, consistent with the phrasing in more modern cases involving the presumption in favor of community property. *See, e.g., Estate of Madsen v. Comm'r*, 97 Wn.2d 792, 650 P.2d 196 (1982). We recognize that various phrasings have been used in our cases throughout the years. Weber notes this has created some uncertainty. 19 WEBER, *supra*, § 10.5, at 138 n.2, § 10.6, at 140. Today we make clear that, once a presumption in favor of either community or separate property is established, the burden to overcome the presumption is by clear and convincing evidence. There is no reason to differentiate between the evidence needed to overcome the presumption in these two situations given our recognition that the right of a party in her separate property is "as sacred" as the right of spouses in their community property. *Guye*, 63 Wash. at 352.

the confusion created by the *Hurd* opinion.[5] The authors of *Washington Practice* have described *Hurd* as "most unfortunate" and encouraged us to disapprove its reasoning. 19 WEBER, *supra*, § 10.7, at 142 n.4; 19 SCOTT J. HORENSTEIN ET AL., WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY LAW § 10.7 n.4, at 46 (Supp. 2009-10) (citing *Borghi* and *Deschamps*). National commentators have also criticized the sort of joint title gift presumption that the Court of Appeals in *Hurd* and *Olivares* adopted. Morgan & Snyder, *supra*, at 348 (citing *Hurd*). We take this opportunity to clarify the applicable community property principles and disapprove any reading of *Hurd* and *Olivares* that suggests a gift presumption arising when title to property is changed from the name of a single spouse to both spouses.

¶11 Preliminarily, some of the confusion in this area may be due to an unnecessarily broad reading of *Hurd*. The court in *Hurd* never held that the name on the deed itself supported the community property presumption or even provided any evidence of the character of the property. Instead, the focus was on Mr. Hurd's intent, i.e., did he intend a gift to the community when he added Mrs. Hurd to the title " 'for love and consideration'." *Id.* at 42. Had the change in title alone given rise to an evidentiary presumption, then it would not have been necessary for the court to resolve the case as it did, by remanding to the trial court for a factual determination of whether Mr. Hurd intended a gift of his separate property. Carefully considered, then, *Hurd* may not in fact

---

[5] Though the Court of Appeals discussed only *Hurd*, the same language also appears in *Olivares*, 69 Wn. App. at 336, a Court of Appeals case decided at about the same time as *Hurd*. *See* 19 SCOTT J. HORENSTEIN ET AL., WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY LAW § 11.24 n.4, at 66 (1997 Supp. 2009-10).

have created a gift presumption arising from the inclusion of a spouse's name on the deed to real estate during marriage, and the conflict the Court of Appeals posited between *Hurd* and *Deschamps* may not in fact exist.

¶12 Nonetheless, there is language in *Hurd* that supports the Court of Appeals' reading of the opinion and appears to create a joint title gift presumption:

> We now hold that a spouse's use of his or her separate funds to purchase property in the names of both spouses, absent any other explanation, permits a presumption that the purchase or transaction was intended as a gift to the community. We also hold that there must be clear and convincing proof to overcome such a presumption.

*Id.* at 51.[6] These statements are at odds with well-established principles of community property law. The Court of Appeals traced these principles to *Deschamps*, in which we addressed a similar dispute over real property between a surviving spouse and the decedent's daughter from a prior marriage. We rejected the surviving husband's argument that the property was community property by virtue of the inclusion of both spouses' names on the deed, recognizing that "courts will not be bound by the terms of the deed but will look beyond it and ascertain, if possible, the true intent and purpose of the parties." *Deschamps*, 77 Wash. at 518. Though there was some evidence in *Deschamps* indicating the husband's name was included on the deed at the wife's direction, we held that the evidence was insufficient to overcome the presumption in favor of separate property and show that the wife intended a gift to the community. *Id.* The Court of Appeals criticized this holding as contrary to "the direct evidence from independent witnesses and the indirect evidence of the community name on

---

[6] Similarly *Olivares* states, "When one spouse uses separate property to acquire an asset, but takes title to that asset in the name of the other spouse, under Washington law there is a rebuttable presumption of a gift to the spouse in whose name title is taken." *Id.* at 336. The court in *Olivares* applied this presumption to determine that a car purchased by the husband using his separate credit and titled in the wife's name was presumptively community property. *Id.*

the deed." *Borghi*, 141 Wn. App. at 302. But, this reading of the facts in *Deschamps* fails to give proper weight to the separate property presumption. Indeed, favoring the approach in *Hurd*, the Court of Appeals believed it would be better to disregard this presumption. *Id.* ("A summary presumption that a gift was not intended does not serve to protect property holders but may thwart legitimate attempts to gift to the community as in *Deschamps*.").

¶13 But the rule stated in *Deschamps* is well established. We have consistently refused to recognize any presumption arising from placing legal title in both spouses' names and instead adhered to the principle that the name on a deed or title does not determine the separate or community character of the property, or even provide much evidence. Cross, *supra*, at 30. As we stated in *Merritt v. Newkirk*, 155 Wash. 517, 285 P. 442 (1930):

> [T]he fact in itself [(legal title)] is not of controlling moment in determining which of the spouses is the actual owner of the property.
>
> Under our somewhat perplexing statutes relating to the acquisition of property, title to real property taken in the name of one of the spouses may be the separate property of the spouse taking the title, the separate property of the other spouse, or the community property of both of the spouses, owing to the source from which the fund is derived which is used in paying the purchase price of the property.

*Id.* at 520-21 (relying on *Deschamps* and noting cases in support "are too numerous to admit of citation here").

¶14 The Court of Appeals lamented that this rule is poor policy, suggesting that the contrary rule in *Hurd* "appropriately protects separate property from inadvertent changes in character but allows for gifts by deed." *Borghi*, 141 Wn. App. at 303. This misapprehends the nature of the relevant presumptions. Disregarding title as relevant to the characterization of property does not hinder a party who intends to transmute her separate property into community property from doing so. With respect to real property, a spouse

may execute a quitclaim deed transferring the property to the community, join in a valid community property agreement, or otherwise in writing evidence his or her intent. *See Volz*, 113 Wash. at 383; *Verbeek*, 2 Wn. App. at 158. *See generally* Cross, *supra*, at 100-03 (discussing transfers of property between spouses). But in the absence of such evidence, the name in which title is held, including a change in title, tells us nothing or is ambiguous at best. As the Court of Appeals acknowledged in this case, there is no evidence as to why Cedarview included Robert Borghi's name on the deed. *Borghi*, 141 Wn. App. at 302-04. Though it may have done so at Jeanette Borghi's direction, the form of the deed may also have been drafted at the direction of another person, or it may have been a scrivener's error. Nothing in the record answers this question.

¶15 More importantly, even when a spouse's name is included on a deed or title at the direction of the separate property owner spouse, this does not evidence an intent to transmute separate property into community property but merely an intent to put both spouses' names on the deed or title. Morgan & Snyder, *supra*, at 354-56. There are many reasons it may make good business sense for spouses to create joint title that have nothing to do with any intent to create community property. *Guye*, 63 Wash. at 353. Allowing a presumption to arise from a change in the form of title inappropriately shifts attention away from the relevant question of whether a gift of separate property to the community is intended and asks instead the irrelevant question of whether there was an intent to make a conveyance into joint title. Morgan & Snyder, *supra*, at 356 (concluding that "[c]ommunity property law and equitable distribution law should adhere to the stated principle that 'title is irrelevant' and analyze the conveyance in terms of a gift, without any legal presumptions of transmutation").

¶16 Further, to apply a presumption based on a change in the name or names in which title is held would create a situation in which a court is asked to resolve an evidentiary question based on nothing more than conflicting presump-

tions. This case illustrates the conundrum. A court starts with the presumption that the property is Jeanette Borghi's separate property because it was acquired with her own funds before her marriage to Robert Borghi. The parties in this case agree it was initially her separate property. Then, the court must rely on the inclusion of both Robert and Jeanette Borghi's names on the 1975 deed to support a presumption that the property is community property. Applying these presumptions simultaneously, the court reaches an impasse. If we somehow reason that the community property presumption must prevail because it is later in time, then what became of the rule that clear and convincing evidence of actual intent is needed to overcome the original separate property presumption? In sum, applying a gift presumption to counter the separate property presumption in these circumstances would reduce community property principles to a game of King's X. *See* 19 WEBER, *supra*, § 10.7 n.4, at 142. We refuse to do so and instead adhere to the well-settled rule that no presumption arises from the names on a deed or title. To the extent *Hurd* and *Olivares* suggest a gift presumption arising when one spouse places the name of the other spouse on title to separate property, we disapprove these cases.

¶17 The remaining question is whether, once the erroneous joint title gift presumption is set aside, the Estate presented clear and convincing evidence that Jeanette Borghi's separate property converted to community property prior to her death. While the Court of Appeals surmised that *someone* must have apprised the vendor on the real estate contract of the desire to have both names included on the fulfillment deed, the Estate concedes this is not evidence of Jeanette Borghi's intent. Moreover, because the property at issue is real property, an acknowledged writing evidencing Jeanette Borghi's intent to transfer her property to the community was required, and no such

writing is in evidence.[7] In the absence of clear and convincing evidence to the contrary, the issue must be resolved on the weight of the presumption that the property was Jeanette Borghi's separate property.

## CONCLUSION

¶18 We hold that the property acquired by Jeanette Borghi prior to her marriage to Robert Borghi was presumptively her separate property. No contrary presumption arose from the fact that a deed was later issued in the names of both spouses, and to the extent *Hurd* and *Olivares* endorse a joint title gift presumption, we disapprove these cases. Because the Estate did not present clear and convincing evidence to overcome the separate property presumption, we hold that the property in question remained Jeanette Borghi's separate property at the time of her death. We affirm the Court of Appeals.

ALEXANDER, C.J., and SANDERS and CHAMBERS, JJ., concur.

¶19 MADSEN, J. (concurring) — The character of property as separate or community is established at acquisition, not at the time of payment, delivery, or conveyance. *In re Marriage of Skarbek*, 100 Wn. App. 444, 447, 997 P.2d 447 (2000). Property acquired before marriage is presump-

---

[7] To the extent the Estate relies on Robert and Jeanette Borghi's subsequent use of the property to secure a mortgage under which they were jointly obligated, this fact is immaterial to the determination of the character of the property. Under the date of acquisition rule noted above, the separate property character of the property was established at the time Jeanette Borghi contracted to purchase the property. Later community property contributions to the payment of obligations, improvements upon the property, or any subsequent mortgage of the property may in some instances give rise to a community right of reimbursement protected by an equitable lien, but such later actions do not result in a transmutation of the property from separate to community property. *See Guye*, 63 Wash. at 352-53 (noting that the spouses' joinder in encumbrances upon property does not support claim of community property); *Merkel v. Merkel*, 39 Wn.2d 102, 113-15, 234 P.2d 857 (1951) (recognizing community right to equitable reimbursement for payments on mortgage taken on husband's separate property. *See generally* Cross, *supra*, at 67-75 (discussing right to reimbursement and equitable lien).

tively separate property. *Id.* Once established, separate property retains its separate character unless there is direct and positive evidence of a change in character. *Id.* I agree with the lead opinion that joinder of Bobby Borghi on a fulfillment deed issued during marriage does not, by itself, demonstrate a sufficiently clear intent by Jeanette Borghi to transform her separate property into community property. The separate or community character of property is not determined by the title name under which it is held. In this case there is no evidence explaining why Mr. Borghi's name was included on the deed and no other evidence that Ms. Borghi intended that her separate property become community property.

¶20 I write separately because the lead opinion says that only a writing may serve as evidence in determining whether Ms. Borghi intended to transform her separate real property into a community asset. Lead opinion at 488-89, 490. Since there is no evidence, written or otherwise, bearing on the question, I do not believe this case requires us to decide what type of evidence is sufficient to overcome the separate property presumption and I would not do so.

¶21 OWENS, J. (dissenting) — Citing a 1914 case, the lead opinion holds that the name or names on a deed have no impact on whether property is community or separate and thereby throws out settled law that Washington families have relied on for over 20 years. By rejecting the community titling presumption, the lead opinion provides little, if any, additional protection for families, but inevitably invalidates the choices that some spouses have made with regard to their property. This holding unnecessarily complicates the lives of Washington families, and I strongly dissent.

¶22 The community titling presumption simply states that when one spouse changes the title of separate property to list both members of the couple as owners, there is a rebuttable presumption that the spouse intended to change the property to community property. *In re Marriage of Hurd,*

69 Wn. App. 38, 51-53, 848 P.2d 185 (1993). This presumption is solidly based in our precedent and protects families from inadvertent changes while giving legal effect to their decisions regarding their property. The rule's basis in both law and common sense has led the majority of states to adopt the rebuttable presumption of community property in community titling situations. *See Steinmann v. Steinmann*, 2008 WI 43, ¶ 51, 309 Wis. 2d 29, 749 N.W.2d 145 (" 'The joint title gift presumption is presently recognized in a majority of American jurisdictions.' " (quoting BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 5:43, at 476 (3d ed. 2005))). Because the presumption is rebuttable, families are still protected against inadvertent or fraudulent changes. If there is any evidence that the families did not intend to change the character of the property or that the title was changed due to fraud or duress, the presumption of community property can be rebutted.

¶23 The lead opinion contends that its rejection of the joint title presumption will not hinder spouses who intend to change separate property to community property, lead opinion at 488, but it absolutely does. Any layperson would reasonably think that retitling his or her separate property in the names of both spouses would cause that property to be jointly owned. It is eminently reasonable for both members of the couple to assume that jointly titled property is thus community property. But under the lead opinion's new rule, families attempting to change the nature of their property by retitling their property will be unable to do so. Instead, families will be forced to use more complex legal forms, likely requiring legal counsel. While the lead opinion's holding may not hinder those affluent families who are able to afford adequate legal assistance, those unable to afford legal counsel will now face unreasonable legal formalities that are counter to common sense. In a day where legal assistance is sadly out of reach for many working

families,[8] this new requirement unnecessarily hinders their ability to dispose of their property without engaging in complex legal formalities.

¶24 The lead opinion also fails to address how this new rule will apply to unmarried couples in committed, intimate relationships. If one partner in a committed, intimate relationship adds the other partner to the deed of his or her separate property, is the property not considered joint property? What happens to the partner added to the deed, who likely (and reasonably) believed he or she was a joint owner of the property? The idea that this change in title "tells us nothing," lead opinion at 489, ignores the reality of how many families—particularly those without access to legal counsel—organize their property. As a result, the lead opinion refuses to give legal effect to those choices. This decision gives no recourse to those partners who relied on the belief that being added to the deed would provide some protection upon dissolution of a committed, intimate relationship. Instead, the lead opinion would tell those partners they have no legal rights because they did not fill out the correct set of forms. I cannot agree with this reasoning or result.

¶25 The community titling presumption is in line with our precedent, in particular *Scott v. Currie*, 7 Wn.2d 301, 308-09, 109 P.2d 526 (1941). In *Scott*, this court held that when a husband had purchased property with his separate funds and the property was put in his wife's name, a rebuttable presumption arose that the property was a gift to the wife and therefore her separate property. *Id.* The community titling presumption applies this same principle to property put in the names of both spouses. By rejecting the community titling presumption, the lead opinion now calls into question this other area of law.

---

[8] Low income people in Washington are able to obtain legal assistance in family law matters only 30 percent of the time. *See* TASK FORCE ON CIVIL JUSTICE FUNDING, WASH. STATE SUPREME COURT, THE WASHINGTON STATE CIVIL LEGAL NEEDS STUDY (Sept. 2003), *available at* http://www.courts.wa.gov/newsinfo/content/taskforce/CivilLegal Needs.pdf (last visited Oct. 29, 2009).

¶26 Further, the community titling presumption provides stability in the field of family law, as the community titling presumption announced in *Hurd* has been relied on by families, courts, and family law practitioners in Washington since being published in 1993. *See, e.g.*, *In re Marriage of McVay-Tackett*, noted at 138 Wn. App. 1042, 2007 WL 1417297, at *5, 2007 Wash. App. LEXIS 1119, at *11; *Moseley v. Mattila*, noted at 127 Wn. App. 1027, 2005 WL 1178063, at *9-10, 2005 Wash. App. LEXIS 1039, at *26.

¶27 Contrary to the lead opinion's assertion, *In re Estate of Deschamps*, 77 Wash. 514, 137 P. 1009 (1914), and *Merritt v. Newkirk*, 155 Wash. 517, 285 P. 442 (1930), do not stand for the proposition that a court cannot consider the name chosen to be listed on the deed when evaluating the character of the property. Instead, both of those cases indicate that the property's title is not *binding* on the court as to the character of the property.

¶28 In *Deschamps*, the court noted that presumptions are rebuttable and that "courts will not be bound by the terms of the deed." 77 Wash. at 518. The court held that the evidence indicated that the couple intended the property to remain the wife's separate property, including the fact that in the wife's will, she specifically left the apartment building to her daughter and that after his wife's death, the husband's behavior indicated that he did not regard the property as his. *Id.* at 514-16. *Deschamps* does not contradict a rebuttable presumption of community property because the evidence demonstrates that the parties did not intend for the property to be community property, even though they listed both spouses on the deed.

¶29 Unlike the couple in *Deschamps*, there is no evidence that the Borghis did not intend for the property to be community property. Quite the opposite, the evidence in this case demonstrates that the Borghis did intend the property to be community property. *In re Estate of Borghi*, 141 Wn. App. 294, 304, 169 P.3d 847 (2007); Clerk's Papers (CP) at 130-31. The deed was issued in both of their names,

and they accepted the deed when they jointly mortgaged the property. *Borghi*, 141 Wn. App. at 303-04; CP at 130-31. The lead opinion contends that the Borghis' joint mortgage of the property is immaterial to the characterization of the property, but it is relevant to the extent that it indicates acceptance of the jointly titled deed by the Borghis.

¶30 The lead opinion's reliance on *Merritt*, where the court dismissed the evidentiary value of a name *mistakenly* placed on a deed, is similarly misplaced. In *Merritt*, the property had been purchased with the wife's separate funds and the deed was inadvertently put in the name of the husband. 155 Wash. at 520-21. As a result, the court held that the name on the deed was essentially irrelevant to the determination of whether the property is community or separate. *Id.* Certainly, a name that is listed on the deed as a result of an error is not entitled to be given any evidentiary weight. *Id.* Indeed, under the community titling presumption, the wife's property in *Merritt* would remain the wife's separate property because the presumption would be rebutted by the evidence that the husband's name was put on the deed in error—another example of the community titling presumption's built-in protection against inadvertent changes.

¶31 Actions have consequences, and listing your spouse on the deed to your property should result in a presumption that you want the property to be community property. The joint titling presumption is based on simple common sense, and Washington families have relied on it for over 20 years. Reversing this policy will unnecessarily complicate the field of family law and lead to unfortunate consequences for the many families unable to afford legal counsel.

¶32 I respectfully dissent from the lead opinion.

C. JOHNSON, FAIRHURST, and J.M. JOHNSON, JJ., concur with OWENS, J.

Reconsideration denied March 3, 2010.