# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In re the Marriage of: | ) | No. 71212-8-I |
| | ) | |
| SYLVIA A. BOLTON, | ) | DIVISION ONE |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MATTHEW E. SCHNEIDER, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: <u>March 9, 2015</u> |
| | ) | |

COX, J. — In order to convert separate property to community property, the presumption of its separate character must be overcome by clear, cogent, and convincing evidence.[1] Here, there is such evidence to show that Matthew Schneider converted his separate real property to community property. His claims to the contrary are unpersuasive. Accordingly, we affirm the trial court's distribution of property in this dissolution proceeding.

Matthew Schneider and Sylvia Bolton married in 1999. During their thirteen-year marriage, the parties lived in the Commodore Way Seattle home that Schneider purchased in 1989, 10 years before their marriage. At several points during the marriage, the parties had significant work done on the home and refinanced the mortgage encumbering the property. Just after they married, the parties had some plumbing repaired and a shower rebuilt. In 2000-2001, the

---

[1] <u>In re Estate of Borghi</u>, 167 Wn.2d 480, 484-85, 491-92, 219 P.3d 932 (2009).

parties had the kitchen remodeled. The final and most extensive remodel that increased the size of the home to its structural maximum occurred in 2004-2005.

Schneider paid for the first two remodels out of savings generated from his separate income. In conjunction with the final remodel, Schneider refinanced the mortgage with a different bank and took out approximately $200,000 in equity to pay for the remodel.

In July 2003, Schneider executed a quit claim deed that conveyed the property to both Schneider and Bolton, as "husband and wife." The deed recites that the consideration of the conveyance is "to create community property." The cover letter attached to the deed also states that it is "understood" that "my/our intention" is to "create community property." In May 2012, a few months before the parties separated, they entered into an agreement to divide property as follows: Schneider would retain the Commodore Way home. Bolton would retain three Arizona rental properties, and the parties agreed to sell a vacation home in Arizona.

Bolton commenced this dissolution proceeding in June 2012. The parties agreed to a parenting plan to provide for the care of their son born during the marriage. The only issues before the trial court were property characterization and distribution and the amount of income for purposes of setting child support. Bolton and Schneider were the only witnesses who testified at the two-day trial.

The trial court characterized the Commodore Way home as community property and entered the following finding of fact:

> This house was purchased by the husband in 1989 for $194,000.
> He paid all the mortgage payments through 1999. At that time its

2

value was 410,000, net of any mortgage owing. Mortgage payments made after marriage were made by the community. Shortly after the marriage, they remodeled [the] bathroom [with] funds of the husband[']s separate assets. A second remodel occurred in 2001, which included the kitchen and enlarging the back side of the house. The husband testified the source of those funds came from his pre-marriage savings. This was not rebutted. In 2004-5 a third and major remodel occurred. Cost[s] were paid by a 2003 refinance of the home. At that time the net equity in the house was $443,000 ($552,000 value, less $119,000 owed). The wife, a professional designer, designed the remodel. The house was also refinanced in 2001 to take advantage of a better interest rate, and in 2009 to take equity out of the house to purchase a vacation home. The parties agree the net value of the home is $382,716. The husband handled the transaction for the 2003 refinance. At that time, he executed a quit claim deed (Ex. 49). The cover page of that deed provided: "*It is understood and my/our intention to create community property and that title be vested in Matthew E. Schneider and Sylvia A. Bolton, Husband and Wife.*" The language of the quit claim deed include the following: "*for and in consideration of* TO CREATE COMMUNITY PROPERTY". Based upon the conduct of the parties, post marriage, through the payment of the mortgage, their joint efforts in improving the house, and the execution of the quit claim deed, the evidence supports a finding that Schneider's separate interest was gifted to the community. Furthermore, it would be speculative for the court to attempt to segregate the asset, given the addition of community efforts improving the home and community funds used to pay the "mortgage" since 1999.[2]

The court also determined that an equal division of the assets was equitable:

Each party is healthy and appropriately trained for the work that they do. The wife is being awarded income producing assets. The husband has had the ability to earn more [than] the wife in the past. There is no reason that one of the spouses should be awarded more than the other.[3]

Accordingly, the court allocated significant financial assets to each party.

The court also distributed the real property in accordance with the parties' pretrial

---

2 Clerk's Papers at 51-52 (internal footnote omitted).
3 Clerk's Papers at 55.

agreement, awarding the Commodore Way property to Schneider and the three Arizona rental properties to Bolton. The court also awarded the proceeds from the post-separation sale of the Arizona vacation home to Schneider.

Schneider appeals.

## Characterization of Property

Schneider contends the trial court erred in characterizing the Commodore Way home as community property. Because the quit claim deed and related documents show by clear, cogent, and convincing evidence that he converted this separate property to community property, we disagree.

In a dissolution action, all property, community and separate, is before the court for distribution.[4] The trial court's characterization of property as community or separate is a mixed question of law and fact.[5]

The character of property as separate or community property is determined at the date of acquisition.[6] Presumptions play a significant role in determining the character of property as separate or community property.[7] Once the separate character of property is established, a presumption arises that it remained separate property in the absence of sufficient evidence to show an intent to transmute the property from separate to community property.[8] Overcoming this presumption requires clear and convincing evidence.[9]

---

[4] In re Marriage of Stachofskv, 90 Wn. App. 135, 142, 951 P.2d 346 (1998).
[5] In re Marriage of Skarbek, 100 Wn. App. 444, 447, 997 P.2d 447 (2000).
[6] Borghi, 167 Wn.2d at 484.
[7] Id. at 483.
[8] Id. at 484.
[9] Id. at 491.

4

Characterization of property as community or separate is not controlling in division of property between the parties in a dissolution proceeding, but the court must have in mind the correct character and status of the property before dividing the property.[10] Mischaracterization does not require remand unless the characterization is crucial to the distribution.[11]

Schneider claims there was no clear and convincing evidence to overcome the presumption that the home remained his separate property. He points to his unequivocal testimony that he did not intend to transfer the property to the marital community or create community property and he executed the deed merely to satisfy the bank's requirements to secure the loan for the remodel. Schneider points out that there was a refinance in 2001 and he did not take this earlier opportunity to transfer the property. Therefore, he argues that the trier of fact could only infer that the later conveyance was solely an accommodation to the demands of the bank. We disagree.

The chief problem with this argument is that it conflicts with the objective manifestations of this actions. He executed a quit claim deed and associated documents that clearly show his objective intent to convert his separate property to community property. His motive in doing so is irrelevant. In short, this evidence is sufficient to overcome the presumption that the character of the property remained separate.

Relying on the Supreme Court's plurality opinion in In re Estate of Borghi, Schneider argues that the trial court in this case erroneously applied a

---

[10] In re Marriage of Brewer, 137 Wn.2d 756, 766, 976 P.2d 102 (1999); Blood v. Blood, 69 Wn.2d 680, 682, 419 P.2d 1006 (1966).
[11] In re Marriage of Langham & Kolde, 153 Wn.2d 553, 563-64 n.7, 106 P.3d 212 (2005).

presumption based on the fact that title to his separate property was placed in the names of both married parties.[12] He is mistaken.

In Borghi, a third party placed title to real property the wife owned before the marriage in the names of both spouses.[13] By the time the case was ultimately resolved, both spouses had passed away and there was no evidence in the record as to why the third party placed both names on the title, whether the third party was directed to do so, or whether it was error.[14]

But the parties here did not simply add Bolton's name to the title. And the Borghi court emphasized that a party who intends to transfer separate property to the marital community may do so by several means that evidence clear intent. The court specified that one of those means is to "execute a quitclaim deed transferring the property to the community, join in a valid community property agreement, or otherwise in writing evidence his or her intent."[15] The quit claim deed provides clear evidence of Schneider's intent to transfer the property to the community and is sufficient to overcome the presumption that Schneider's separate property remained separate by clear and convincing evidence.

Although Schneider testified that he did not intend to transfer the property and his sole reason for executing the deed was to obtain a loan, the July 14, 2003 quitclaim deed conveyed the Commodore Way property to Schneider and Bolton as "husband and wife" and the consideration listed on the deed is "to

---

[12] See Borghi, 167 Wn.2d at 488 ("We have consistently refused to recognize any presumption arising from placing legal title in both spouses' names and instead adhered to the principle that the name on a deed or title does not determine the separate or community character of the property, or even provide much evidence.").

[13] Id. at 482.

[14] Id. at 489.

[15] Id. at 488-89.

create community property." And in contrast to Schneider's testimony that he signed the agreement at the behest of the bank, did not understand the legal ramifications, and did not discuss it with Bolton, Bolton said:

> We discussed the fact that [Schneider] said that this is my property now, too, and we need to both take care of it and both be part of it. And he put me on the mortgage and he's given me paperwork to sign, which I've signed.[16]

We defer to the fact finder on witness credibility and the persuasiveness of the evidence.[17] Because the trial court is in a superior position to weigh evidence and assess credibility we do not revisit such decisions on appeal.[18]

In addition to its reliance on the quitclaim deed, the court also found that the community expended significant efforts to improve the home and these efforts lent support to its determination that Schneider had converted his separate property to community property. Schneider contends that the record does not support these findings.[19] Again, we disagree.

The trier of fact could infer from the testimony that after the marriage, the parties used Schneider's community earnings to pay the mortgage. And there is no dispute that Bolton did a significant amount of design work for the remodel. She testified that she was not compensated because "it was our house."

Because the trial court did not err, it was under no obligation to consider the option of a community right to reimbursement for the increase in value attributable to community contributions. And perhaps most importantly,

---

[16] Report of Proceedings (July 29, 2013) at 85.
[17] In re Marriage of Akon, 160 Wn. App. 48, 57, 248 P.3d 94 (2011).
[18] In re Marriage of Olivares, 69 Wn. App. 324, 336, 848 P.2d 1281 (1993).
[19] See In re Marriage of Pennington, 142 Wn.2d 592, 602-03, 14 P.3d 764 (2000) (appellate court reviews trial court's property distribution to determine whether substantial evidence supports the findings of fact, and whether those findings support the conclusions of law).

Schneider does not contend or demonstrate that the trial court's characterization of the Commodore Way property was crucial to its overall distribution of property or that the alleged mischaracterization resulted in an inequitable division of assets. Accordingly, even if he were correct regarding the legal characterization, Schneider fails to establish that an error in characterizing the property would be grounds for reversal in this case.

We affirm the decree of dissolution and the findings of fact and conclusions of law. To the extent Bolton contends that Schneider's appeal is frivolous and requests an award of fees on appeal, we exercise our discretion to deny the request.

_COX, J._

WE CONCUR: