IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 39711-4-III |
| | ) | |
| DAN BARTH, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| KELLI BARTH, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — In this dissolution appeal, Kelli Barth primarily argues the trial court erred by mischaracterizing the marital home as community property. We agree and remand for an evidentiary hearing so the trial court can divide all property in a just and equitable manner consistent with RCW 26.09.080, and to enter appropriate findings of fact and conclusions of law consistent with *In re Marriage of Miracle*, 101 Wn.2d 137, 675 P.2d 1229 (1984).

FACTS

On August 17, 2016, Kelli Barth, then Kelli Hornbaker, purchased what would become the marital home for $207,000. Kelli[1] paid $40,000 as a down payment, and financed the balance. The statutory warranty deed was issued in Kelli's name.

The parties married on September 18, 2016, the same day their son was prematurely born. Over the next six years, for the most part, Kelli stayed at home and cared for their child while Dan's community wages paid the marital home's expenses.

In June 2022, Dan filed for divorce. Kelli and Dan separated on June 30, ending the marital community. The parties agreed that the marital home value was $402,000. The parties also agreed that the marital home was Kelli's separate property, but Dan asserted an "equitable interest" in that property. Clerk's Papers (CP) at 854. Specifically, Dan asked that Kelli's $40,000 down payment be awarded to her, but that the remaining equity be divided equally.

At trial, Dan testified that he was very involved with purchasing the marital home. He said he was not on the title, the mortgage, and similar documents because he had poor credit. He further claimed that Kelli had promised to quitclaim the marital home to the community, but she later refused.

---

[1] In divorce appeals, we regularly refer to the parties by their first names. No disrespect is intended.

Kelli testified that she looked for homes without Dan, and that he was not very involved with finding or purchasing the marital home. She denied she had promised to sign a quitclaim deed. Kelli also testified that Dan had a Discover credit card in his name, obtained during their marriage, and that $3,000 of the balance was incurred by Dan to pay his own attorney fees.

The court occasionally stopped Kelli's attorney during her cross-examination of Dan, limiting her questioning into Dan's relationship with his son and details about the final parenting plan that he and Kelli had agreed to before trial. Part of why the court limited cross-examination was to ensure that the trial concluded within the allotted two days.

With respect to the marital home, the court determined that the $40,000 down payment paid by Kelli was her separate property, but that the remaining equity was community property, and awarded Dan one-half of that equity, or $108,784.50.[2] In support of its community property determination, the court found:

> The home was purchased in [Kelli]'s name because she had stellar credit.
> [Dan] worked and paid for everything while [Kelli] stayed home with the child and took him to his doctor's appointments.

---

[2] The marital home's equity was $257,569.00—the difference between its agreed value ($402,000.00) and the mortgage balance ($144,431.00). The community equity was $40,000.00 less, or $217,569.00. One-half of this amount is $108,784.50.

3

[Dan]'s role was every bit as important as [Kelli]'s. To deny equity to [Dan] would be unfair and unequitable.

CP at 930-31.

With respect to the Discover credit card, the trial court deemed the entire $15,222 debt to be a community debt, and awarded it to Dan.

Kelli appeals.

ANALYSIS

Kelli argues the trial court's property award was not just and equitable. She emphasizes that the award left her in a worse position than she entered the marriage, yet left Dan in a much better position. She argues this error is mostly due to the significant increase in the marital home's appreciation (from $207,000 to $402,000) over the six-year marriage, and the trial court's decision to give this appreciation solely to the community.

CHARACTERIZATION OF PROPERTY

Kelli contends the trial erred by mischaracterizing most of the marital home's equity as community property and Dan's attorney fee debt as community debt. We agree.

In a dissolution proceeding, the trial court's characterization of property presents a mixed question of law and fact. *In re Marriage of Schwarz*, 192 Wn. App. 180, 191-92, 368 P.3d 173 (2016). We review the factual findings supporting the characterization,

including time of acquisition, method of acquisition, and the intent of the donor, for substantial evidence. *In re Marriage of Watanabe*, 199 Wn.2d 342, 348, 506 P.3d 630 (2022). Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the declared premise. *In re Marriage of Crosetto*, 82 Wn. App. 545, 553, 918 P.2d 954 (1996). We review the ultimate characterization of the property de novo. *Watanabe*, 199 Wn.2d at 348-49.

The character of property as separate or community is determined at the date of acquisition. *In re Estate of Borghi*, 167 Wn.2d 480, 484, 219 P.3d 932 (2009). We presume that any increase in the value of separate property is also separate property. *In re Marriage of Elam*, 97 Wn.2d 811, 816, 650 P.2d 213 (1982).

Once the separate character of property is established, it remains separate in the absence of clear and convincing evidence of its conversion to community property. *Borghi*, 167 Wn.2d at 484, 490. When real property is at issue, an acknowledged writing is generally required to overcome the strong separate property presumption. *Id.* at 485. Without evidence sufficient to rebut an applicable presumption, the court must determine the character of the property according to the presumption. *Id.* at 484.

1. *The marital home*

The parties agree that Kelli bought the marital home shortly before marriage. Even if the home was placed in Kelli's name because of her "stellar credit," and even if

Dan's community wages paid most of the home's expenses, these considerations are insufficient to rebut the strong presumption that purchases of real property prior to marriage are the purchasing spouse's separate property. Seldom if ever will disputed evidence of oral promises be sufficient to counter the strong presumption of separate property in these instances. The trial court, appropriately enough, did not find that Kelli promised Dan that she would quitclaim the marital home to the community. This lack of a finding is deemed a finding against Dan, who had the burden of proof on this issue. *In re Welfare of A.B.*, 168 Wn.2d 908, 927, 232 P.3d 1104 (2010). We conclude that the trial court erred by characterizing any portion of the marital home's equity as community property.

As mentioned previously, it was Dan's position at trial that the marital home was Kelli's separate property, but that he nevertheless had an equitable interest. The community is entitled to reimbursement in the form of an equitable lien in separate real property if the community paid the separate property's expenses—such as mortgage, insurance, tax, and upkeep expenses. *Marriage of Miracle*, 101 Wn.2d at 138-39. But "[a] right to reimbursement may not arise if the contributing spouse received a reciprocal benefit flowing from the use of the property." *Id.* at 139. To the extent the trial court's award to the community reflected this notion, the trial court erred by failing to offset the benefit Dan received from living at the marital home.

6

We note that neither party produced evidence of the value that Dan received from living at the marital home. This requires us to determine the proper remedy.

Dan had the burden of establishing an equitable lien in the property, and failed to produce the evidence by which the trial court could calculate the lien's proper value. Yet, one might view the missing evidence as Kelli's obligation to produce, especially if one viewed the evidence as an offset against Dan's equitable lien claim. In this instance, we believe that neither party should be prejudiced by this failure of evidence. We reverse the trial court's division of the marital home's equity, and remand for the parties to produce the evidence necessary for the trial court to calculate the community's equitable lien, if any, in the marital home.

2.      *Attorney fees charged to Discover credit card*

The trial court classified the entire Discover credit card debt as community property. This includes $3,000 of Dan's attorney fees. Although attorney fees in a marriage dissolution are almost necessarily acquired before the marriage is dissolved, they are also almost certainly acquired after "both parties 'exhibited a decision to renounce the community, with no intention of ever resuming the marital relationship.'" *In re Marriage of Terry*, 79 Wn. App. 866, 870, 905 P.2d 935 (1995) (quoting *Oil Heat Co. of Port Angeles, Inc. v. Sweeney*, 26 Wn. App. 351, 354, 613 P.2d 169 (1980)). There is no indication that the attorney fees have become so intermingled with

community assets that they can no longer be traced and identified as separate. *See In re Marriage of Pearson-Maines*, 70 Wn. App. 860, 865, 855 P.2d 1210 (1993). Accordingly, the trial court erred in categorizing the portion of the Discover credit card debt representing Dan's separate attorney fees as community property.

Dan argues that this error was harmless. We agree. The trial court assigned the entire Discover credit card debt to Dan. The trial court's mischaracterization of this relatively small amount did not result in any consequence in the property award.

We conclude that the trial court erred by awarding nearly the entire value of the marital home to the community, and by including the portion of the Discover credit card debt attributable to Dan's attorney fees in the community's debts.

CROSS-EXAMINATION OF DAN

Kelli argues that the trial court abused its discretion when it limited her cross-examination of Dan when most of his case was based solely on his testimony rather than documentation. We disagree.

Washington courts are tasked with "exercis[ing] reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." ER 611(a). Cross-examination may be limited where the relevance of

the evidence is outweighed by the danger of undue delay, waste of time, or needless presentation of cumulative evidence. *Baxter v. Jones*, 34 Wn. App. 1, 3, 658 P.2d 1274 (1983). We review alleged violations of ER 611 for manifest abuse of discretion. *State v. Hakimi*, 124 Wn. App. 15, 19, 98 P.3d 809 (2004).

In *Baxter*, the trial court stopped cross-examination just as the Baxters' counsel began and determined that it was ready to make a ruling. 34 Wn. App. at 2-3. In that case, we held that total preclusion of cross-examination on a legitimate issue calls into question the fact-finding process, and that the premature termination of cross-examination based on a predetermined time to complete trial was error because it prevented the Baxters from fully pursuing their theory of the case. *Id.* at 4.

Here, unlike in *Baxter*, Kelli's counsel had ample opportunity to cross-examine Dan, question his credibility, and pursue her theory of the case. The trial court first limited cross-examination on why Dan did not propose any restrictions against Kelli in the parenting plan. It stepped in again when Kelli's counsel asked about Dan's involvement with taking the Barths' son to medical appointments and whether Dan had left their son with friends so he could go fishing. Although the court expressed concern about concluding the trial in a timely manner, *Baxter* addressed the *total* preclusion of cross-examination on those grounds, not the validity of the court's concern with timeliness during cross-examination in general. Limiting cross-examination when it

9

No. 39711-4-III
*In re Marriage of Barth*

ventured into already addressed areas while allowing Kelli's counsel to question Dan's credibility elsewhere was not a manifest abuse of discretion.

CONCLUSION

We reverse the trial court's property award. We remand for the trial court to correct its characterization of the marital home and the attorney fee portion of Dan's Discover credit card, to make a fair and equitable division of all property consistent with RCW 26.09.080, and to enter appropriate findings and conclusions consistent with *Marriage of Miracle*.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Fearing, J.

Cooney, J.

10