**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| In the Matter of the Marriage of: | No. 86782-2-I |
| HARLAN DEAN, JR., | DIVISION ONE |
| Respondent, | UNPUBLISHED OPINION |
| LAURA LEE DEAN, | |
| Appellant. | |

FELDMAN, J. — Laura Lee Dean appeals from the trial court's dissolution order and decree characterizing a home on Rutsatz Road in Washington (the Rutsatz home) as separate property belonging to her husband, Harlan Dean, Jr., and awarding her an equitable share of the increased value of the home following that disputed characterization. Laura also appeals from the trial court's order denying her subsequent motion for reconsideration.[1] Because Laura fails to establish that the trial court mischaracterized the Rutsatz home as Harlan's separate property, we affirm.

I

Harlan and Laura were first married in 1999. Prior to their marriage, Harlan owned two adjoining parcels of land in Trego, Montana (the Trego property). Both

---

[1] Because Laura and Harlan have the same last name, we refer to them by their first names for clarity.

parties signed a prenuptial agreement which provided that Harlan would maintain ownership of all property that he brought into the marriage. In 2002, Harlan and Laura divorced. Harlan was awarded the property he brought into the marriage, including the Trego property, pursuant to the prenuptial agreement.

On July 19, 2003, Harlan and Laura remarried. In approximately 2005, Laura and Harlan began living on the Trego property, where they continued to live for the following seven years. Then, in January 2012, following various investment losses, Laura and Harlan decided to sell the Trego property for approximately $1.7 million. The proceeds from the sale were deposited in various accounts. Approximately four months later, in April 2012, Laura and Harlan purchased the Rutsatz home for $525,000. In August 2022, Laura and Harlan separated for a second time.

On September 20, 2022, Harlan filed a Petition for Divorce. Prior to the dissolution trial, Laura's financial expert, Alan Knutson, prepared a report opining that there is no indication as to where the proceeds from the sale of the Trego property were deposited, nor could he "find a readily traceable connection between the [Trego] sale and the [Rutsatz] purchase." However, Knutson did note in his report that "[t]he timing of the [Trego] property sale and the purchase of the [Rutsatz] property would indicate a relationship continuing the separate property claim." Laura testified to the same effect: when asked "where . . . the money for the [Rutsatz] house c[a]me from," she replied that it was from "[w]hen we sold Trego." Knutson also testified at trial and reiterated the substance of his report.

Following the dissolution trial, on March 14, 2024, the trial court found that Knutson's report, supplemented by his testimony, regarding the timing of the sale

of the Trego property and the purchase of the Rutsatz home indicated a relationship supporting Harlan's separate property claim. As such, the trial court concluded that one could "follow the money" from the Trego property to the Rutsatz home and, thus, the Rutsatz home was Harlan's separate property. The trial court awarded Laura 50 percent of the increase in value of the Rutsatz home, measured from the date of purchase, amounting to $230,700. Laura subsequently filed a motion for reconsideration, which the trial court denied. This timely appeal followed.

II

Laura's principal argument on appeal is that the trial court incorrectly characterized the Rutsatz home as Harlan's separate property. We disagree.

In dissolution proceedings, trial courts have broad discretion to characterize each asset as separate or community property. *In re Marriage of White*, 105 Wn. App. 545, 549-50, 20 P.3d 481 (2001). An asset is characterized as of the date of its acquisition, and its character does not change thereafter. *Id.* at 550. "[An] asset is separate property if acquired before marriage; acquired during marriage by gift or inheritance; *acquired during marriage with the traceable proceeds of separate property*; or . . . acquired during permanent separation." *Id.* (emphasis added). Separate property "will retain that character as long as it can be traced or identified." *In re Marriage of Schwarz*, 192 Wn. App. 180, 190, 368 P.3d 173 (2016) (citing *In re Marriage of Pearson-Maines,* 70 Wn. App. 860, 865, 855 P.2d 1210 (1993)). Separate funds should be traced with some degree of particularity. *Id.* at 189. Conversely, property acquired during marriage is presumptively community property. *Id.*

When property is acquired during marriage, the burden is on the spouse asserting the property's separate character to establish that character through clear and convincing evidence. *Id.* at 184. The standard of "clear and convincing" evidence requires "positive evidence, direct or circumstantial, that makes a proposition *highly probable*." *Id.* at 218 (emphasis added). "The requirement of clear and [convincing[2]] evidence is not met by the mere self-serving declaration of the spouse claiming the property in question that [the spouse] acquired it from separate funds and a showing that separate funds were available for that purpose." *Berol v. Berol*, 37 Wn.2d 380, 381-82, 223 P.2d 1055 (1950). At the same time, the testimony of a "single credible witness" can serve as clear and convincing evidence of tracing of separate funds, even when refuted by other testimony. *In re Schwarz*, 192 Wn. App. at 214.

A trial court's characterization of property is a mixed question of law and fact. *In re Marriage of Watanabe*, 199 Wn.2d 342, 348, 506 P.3d 630 (2022). "'The time of acquisition, the method of acquisition, and the intent of the donor, for example, are questions for the trier of fact.'" *In re Marriage of Kile*, 186 Wn. App. 864, 876, 347 P.3d 894 (2015) (quoting *In re Marriage of Martin*, 32 Wn. App. 92, 94, 645 P.2d 1148 (1982)). The ultimate characterization of property as community or separate, in turn, is a question of law that we review de novo. *In re Schwarz*, 192 Wn. App. at 192. Where, as here, the trial court has weighed the evidence, our "role is simply to determine whether substantial evidence supports the findings

---

[2] The *Schwarz* court refers interchangeably to the quantum of required evidence as "clear and convincing" and "clear and satisfactory." 192 Wn. App. at 189. We utilize the former as it appears to be more prevalent and there is no demonstrated difference between the two.

of fact, and if so, whether the findings in turn support the trial court's conclusions of law." *In re Marriage of Rockwell*, 141 Wn. App. 235, 242, 170 P.3d 572 (2007). "'Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise.'" *In re Marriage of Griswold*, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002) (quoting *Bering v. SHARE*, 106 Wn.2d 212, 721 P.2d 918 (1986)).

In reviewing the trial court's findings, our review is largely deferential. We will not "'substitute [our] judgment for the trial court's, weigh the evidence, or adjudge witness credibility.'" *In re Marriage of Kaplan*, 4 Wn. App. 2d 466, 479, 421 P.3d 1046 (2018) (quoting *In re Rockwell*, 141 Wn. App. at 242). "'We need determine only whether the evidence most favorable to the prevailing party supports the challenged findings, even if the evidence is in conflict.'" *DeVogel v. Padilla*, 22 Wn. App. 2d 39, 48, 509 P.3d 832 (2022) (quoting *Thomas v. Ruddell Lease-Sales, Inc.*, 43 Wn. App. 208, 212, 716 P.2d 911 (1986)). Additionally, "'In determining whether substantial evidence exists to support a court's finding of fact, the record is reviewed in the light most favorable to the party in whose favor the findings were entered.'" *In re Kaplan*, 4 Wn. App. 2d at 479 (quoting *In re Marriage of Gillespie*, 89 Wn. App. 390, 404, 948 P.2d 1338 (1997)). Thus, we view the record in the light most favorable to Harlan, as he is the party in whose favor the findings were entered.

Applying these legal principles here, substantial evidence supports the trial court's findings, which in turn support its conclusion that the Rutsatz home is Harlan's separate property. The Trego property that Laura and Harlan lived in prior to moving to the Rutsatz home was brought into the second marriage by Harlan.

As such, the Trego property was separate property, as it was "an asset . . . acquired before [the] marriage." *In re White*, 105 Wn. App. at 550. The Rutsatz home was purchased during Laura and Harlan's second marriage. As such, there is a presumption that the Rutsatz home is community property. However, as discussed above, that presumption can be rebutted by clear and convincing evidence which makes the proposition that the Rutsatz home was purchased with separate funds—and is therefore Harlan's separate property—highly probable.

In rebutting this presumption, the "single credible witness" (*In re Schwarz*, 192 Wn. App. at 214) is Laura's expert, Knutson. In his initial report, Knutson opined: "The timing of the [Trego] property sale and the purchase of the [Rutsatz] property would indicate a relationship continuing the separate property claim." Knutson repeated this opinion at trial, noting that the purchase of the Rutsatz property "followed by a little over two and a half months from the sale of the [Trego] property." The trial court, in turn, found this testimony to be credible, and we defer to that determination. *In re Kaplan*, 4 Wn. App. 2d at 479. This evidence supports Harlan's assertion that the Rutsatz home was purchased with separate property. That is particularly so when we view the evidence in the light most favorable to Harlan (the party in whose favor the findings were entered) as required. *Id*. As such, the trial court findings are supported by substantial evidence and the findings, in turn, support the trial court's conclusion that the funds used to purchase the Rutsatz home had retained their separate character prior to the purchase.

Laura's many arguments that the Rutsatz home is community property are unpersuasive. First, Laura contends that there is no extrinsic evidence to support Harlan's contention that the Rutsatz home was purchased through separate funds

and that relying on Harlan's testimony alone does not qualify as clear and convincing evidence. However, Laura overlooks the expert report and testimony of Knutson, which the trial court relied on in concluding that the Rutsatz home was purchased with separate funds. Knutson's report and testimony serve as "evidence, direct or circumstantial, that makes a proposition highly probable." *In re Schwarz*, 192 Wn. App. at 218. The trial court did not rely solely on "self-serving testimony" from Harlan, as Laura contends, but on the testimony and report "of a third-party," Knutson. *Id.* at 192-93, 215

Second, Laura contends that instead of maintaining their separate character, the funds from the Trego property were commingled. Again, this argument fails. When community and separate funds are "commingled," the presumption may arise that the funds have been rendered community property. *In re Schwarz*, 192 Wn. App. at 190. However, commingling in this sense is not simply a combining of funds, it must be "hopeless commingling" which arises "only after the effort at tracing proves *impossible*." *Id.* (emphasis added). Here, tracing was possible, as evidenced by Knutson's report that the timing of the sale of the Trego property and purchase of the Rutsatz home indicates that the separate funds from the Trego property sale were used to purchase the Rutsatz home. Indeed, Laura herself testified at trial that the funds from the Trego property sale were used to purchase the Rutsatz home. This testimony, along with Knutson's report (which the trial court found credible), all of which must be viewed favorably to Harlan, makes it highly probable that the Rutsatz home was purchased with the

separate funds acquired through the sale of the Trego property. Where, as here, tracing is possible, funds are not commingled.[3]

Third, Laura argues that because Harlan intended for her to live in the Rutsatz home, her name was on the deed, and no prenuptial agreement was executed prior to the second marriage, Harlan intended to convert the Rutsatz home to community property. Again, we are unpersuaded. Instructive here, the court in *Borghi* noted that courts have "consistently refused to recognize any presumption arising from placing legal title in both spouses' names and instead adhered to the principle that the name on a deed or title does not determine the separate or community character of the property, or even provide much evidence." *In re Estate of Borghi*, 167 Wn.2d 480, 488, 219 P.3d 932 (2009). We also fail to find a connection between a lack of prenuptial agreement and an intent to transmute the character of property. There is no evidence that Harlan abstained from executing a second prenuptial agreement because he intended to transmute the character of all property brought into the marriage. Harlan's intention to have Laura live in the Rutsatz home with him, the inclusion of her name on the deed, and a lack of prenuptial agreement does not constitute sufficient evidence that Harlan intended to transmute the character of the property from separate to community property.

In sum, the trial court did not err in characterizing the Rutsatz home as Harlan's separate property. Laura's remaining assignments of error are that the

---

[3] Relatedly, Laura argues that her testimony that the funds from the sale of the Trego property were used to purchase the Rutsatz home is not an opposing party admission, as she "did not admit that the Trego property was Harlan's separate property." This argument is waived, as Laura has not assigned error to this or any other evidentiary ruling. *See Rutter v. Rutter's Estate*, 59 Wn.2d 781, 788, 370 P.2d 862 (1962).

court erred in awarding her an equitable share of the increased value of the Rutsatz home based on that disputed characterization and abused its discretion[4] in denying her subsequent motion for reconsideration challenging its prior determination. Because the trial court did not err in characterizing the Rutsatz home as separate property, Laura's remaining arguments likewise fail.

III

Lastly, Harlan argues he is entitled to attorney fees pursuant to RCW 26.09.140, which permits a court to award fees to the prevailing party in a family law case after considering the financial resources of the parties. *In re Marriage of Hannah*, 27 Wn. App. 2d 577, 591, 541 P.3d 372 (2023). In determining whether a fee award is appropriate pursuant to the statute, we consider both the parties' relative ability to pay and the arguable merit of the issues raised on appeal. *In re Marriage of Leslie*, 90 Wn. App. 796, 807, 954 P.2d 330 (1998). But here, Harlan "has not filed an affidavit of financial need with the court in accordance with RAP 18.1(c), so we cannot grant fees under RCW 26.09.140." *In re Hannah*, 27 Wn. App. 2d at 591.

Affirmed.

_Feldman, J._

WE CONCUR:

_____

_Faaring, J._

---

[4] *See In re Marriage of Fallow*, 31 Wn. App. 2d 24, 41, 547 P.3d 914 (2024) ("We review a superior court's decision to grant or deny a motion for reconsideration for abuse of discretion.").